MAY 20, 1803.

# John Craig *et al. v.* Charles Pelham.

*Upon an appeal from a decree of the General Court.*

1. Although a party at the time of making his entry have notice that another has made a private survey of the same land, and intends to make an entry thereon, yet he is not bound thereby, and if his entry is first made it must prevail.

2. Parol evidence is inadmissible to prove anything which is not expressed or necessarily implied in an entry.

Pelham was complainant in the court below, therefore his entry ought to be first investigated. It is as followeth, viz: "January 7th, 1783. Charles Pelham, assignee, etc., enters one thousand acres, etc., beginning at the south-east corner of John Williams's settlement and pre-emption, where John Marshall joins him with five hundred acres on the waters of the south fork of Elkhorn, running with his line north-west to the extremity thereof, thence at right angles for quantity." At the time this entry was made it appears that Williams had obtained a certificate from the commissioners for a settlement and pre-emption, and had entered

them with the surveyor. There is nothing, however, in the exhibits in this cause which identifies any of the objects called for in the location of his settlement. So that until the situation of Williams's settlement and pre-emption is ascertained, Pelham's entry remains too vague and indefinite to be supported. But Pelham has placed his dependence on private or experimental surveys which it is proven were made of Williams's settlement and pre-emption on the 2d and 3d of January, 1783; and that conformably thereto Williams amended his pre-emption entry on the 9th of the same month, and that these surveys stand on record as made on the 22d of May in the same year; and, moreover, that Craig had also actual knowledge of these surveys when he made his entry on the 9th of June following. As to Williams's experimental surveys they could not bind himself or any other person, and it is as clear that the amendment of his pre-emption entry could not change Pelham's entry which was made two days before. Had Pelham chosen to adhere to Williams's entries as they then existed, his entry could not have been separated from them, for to admit testimony to prove that when he made his entry he meant to adjoin Williams's intended amendment, would be as improper as to admit testimony to prove that when a locator has called to run north he meant to run south. And as to the actual knowledge which Craig had, when he made his entry, of Pelham's intentions, this court does not conceive that it has been proven; nor does it conceive that such proof is admissible, because it would then follow that with regard to those who knew that an entry meant what it did not express nor imply, it must be construed differently from the manner all other persons were bound to understand it, which would be highly absurd.. Such proof would also be equally illegal and dangerous, because the law prescribes the requisites which an entry shall contain; and the admission of parol testimony to prove any thing which is not expressed, or necessarily implied in an entry, would be opening a wide door for perjury, which courts of justice ought studiously to avoid. Besides, in many instances, the admission of such proof would produce the ridiculous consequence of making judicial decisions run in a circle. For example: A first recovers land of B, not because A's entry was such as the law required, but because B had actual knowledge of A's intentions. Secondly, C, who had not this knowledge, recovers the same land from A because A's entry is vague. Thirdly, B recovers the same land from C because C held

it by the youngest entry, consequently, by the intervention of C and his entry, A and B have returned to the point from which they set out, and are precisely in the same situation as if a suit had not subsisted between them. It is only necessary further to observe that this opinion is wholly repugnant to the decree of the court below.

Wherefore, it is decreed and ordered that the said decree of the general court be reversed, and that the appellee do pay unto the appellants their costs expended in the prosecution of this appeal. And it is further decreed and ordered, that the suit be remanded to the said general court, that it may enter up a decree of dismissal in favor of the said appellants, and for their costs expended in defending the same, from the time it was instituted in the late supreme court of the district of Kentucky until the entry of such dismission, which is ordered to be certified to the general court.