Cunningham v. Terminal Co.

JAMES CUNNINGHAM *v.* MEMPHIS RAILROAD TERMINAL
COMPANY.

(*Jackson.*   April Term, 1912.)

1. EMINENT DOMAIN.  Finality of appropriation of land as dis-
   sociated from litigated question as to amount of damages.

   The judgment for the appropriation of land in condemnation
   proceedings becomes final upon the confirmation of the report of
   the jury of view, and the payment of the assessment of dam-
   ages, or upon the execution of the bond required by the statute,
   as the essential prerequisite preliminary to taking possession;
   and that part of the case is dissociated from the assessment of
   damages, which may thereafter proceed as a separate litiga-
   tion.  (*Post, pp.* 347-356.)

   Code cited and construed:   Secs. 1845, 1846, 1848, 1849, 1855, 1856,
   1858-1861, 1863, 1865 (S.); secs. 1550, 1551, 1553, 1554, 1560, 1561,
   1563-1566, 1568, 1570 (M. & V.); secs. 1326, 1327, 1329, 1330, 1336,
   1337, 1339-1342, 1344, 1346 (T. & S. and 1858).

   Cases cited and approved:   Railroad v. Campbell, 109 Tenn., 640;
   Water Co. v. Scott, 111 Tenn., 321; Memphis v. Hastings, 113
   Tenn., 142; Snowden v. Shelby Co., 118 Tenn., 725.

   Cases cited and disapproved in part:   Alloway v. Nashville, 88
   Tenn., 510; Railroad v. Moggridge, 116 Tenn., 445; Snowden v.
   Shelby Co., 118 Tenn., 725.

2. SAME.  At what time a nonsuit may be taken in condemna-
   tion cases.

   A  nonsuit  in  a  condemnation  case  under  the  eminent
   domain laws must be taken before the case has been finally
   submitted to the jury on a trial in the circuit court before
   the court and jury, and before the jury has retired to consider
   of its verdict; and there can be no nonsuit after the report
   of the jury of view has been confirmed without exception or
   appeal, and the land has been decreed to the petitioner; and

where the appeal from the report of the jury of view to the circuit court goes to the question of damages only, and the report is in other respects confirmed, the land decreed to the petitioner, and a bond executed for the purpose of taking possession, the judgment of condemnation is final, and the petitioner cannot thereafter take a nonsuit. (*Post, pp.* 345-347, 356, 357.)

Code cited and construed:   Secs. 4689, 4691 (S.); secs. 3678, 3680 (M. & V.); secs. 2964, 2966 (T. & S. and 1858).

3. **SAME.   Abandonment, impracticability, or impossibility of the enterprise will not authorize nonsuit, when.**

After the report of the jury of view, but before its confirmation, and before bond has been given in double the amount of damages found by the jury of view, the petitioner may take a nonsuit, even though it has incidentally invaded the possession of the defendant, if it has not taken possession under any order of court, where it is made to appear that the enterprise has become impracticable, and has been abandoned; but after the adjournment of the term of court at which the report of the jury of view was confirmed, without exception or appeal, and the land was decreed to the petitioner, and bond was given as required by statute, it is too late for petitioner to withdraw, even where it is made to appear that the enterprise has been abandoned or has been impracticable or impossible. (*Post, pp.* 356, 357.)

Case cited and approved:   Stevens v. Duck River Navigation Co., 1 Sneed, 237, 244, 245.

4. **NONSUITS.   May be taken in jury and nonjury cases, when.**

A nonsuit cannot be taken after the jury has retired to consider of its verdict in a jury case, or after the cause has been finally submitted to the court, in a case tried before the court without the intervention of a jury. (*Post, p.* 356.)

Code cited and construed:   Secs. 4689, 4691 (S.); secs. 3678, 3680 (M. & V.); secs. 2964, 2966 (T. & S. and 1858).

Case cited and approved:   Railroad v. Sansom, 113 Tenn., 683.

Cunningham v. Terminal Co.

FROM SHELBY.

Appeal from the Circuit Court of Shelby County (1st Div.) to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—J. P. YOUNG, Circuit Judge.

MCKELLAR & KYSER, for Cunningham.

FITZHUGH & BIGGS, for Terminal Co.

MR. JUSTICE NEIL delivered the opinion of the Court.

This was an application in the circuit court of Shelby county by the defendant in error to dismiss its proceedings for condemnation of certain property owned by the plaintiff in error, after the condemnation proceedings had reached such a stage as that a jury of view had been appointed to assess the value of the property, had made such assessment, had reported fixing the value of the property at $10,000, and after an order had been entered confirming the report of the jury, and after an appeal from this finding by the defendant in error to the circuit court for a trial before a regular jury upon the subject of damages. It also appears that this motion was made after the defendant in error had given a bond in double the amount of the finding of the jury of view, payable to

plaintiff in error; and also an ordinary appeal bond in the penalty of $250. The first mentioned bond was somewhat inartificially worded, but the court thinks, it was substantially such as was required by Shannon's Code, Sections 1863 and 1865, quoted *infra*.

The trial judge sustained the motion to dismiss, and the plaintiff in error excepted and prayed an appeal to the court of civil appeals. That court sustained the trial judge, and the case was then brought to this court by writ of *certiorari*.

The motion to dismiss was first made on the 3d of December, 1909, which was during the November term of that year, and was supported by affidavits to the effect that the purposes for which the company was formed had become impossible, owing to its inability to make contracts with certain ten railroad companies which it purposed to serve, and without whose patronage it could not act at all. The motion was at the time refused by the trial court. Afterwards, on the 17th of December, 1910, which was during the November term of that year, the defendant in error renewed its motion. The matter was set down for argument by the trial court on the evidence, and the case was heard before him. The plaintiff in error insisted that the defendant in error, by the execution of the bond first mentioned, had acquired the right, under the statute, to take possession of the property, and, under the decree of the court, had become the owner of the property, and that it had in fact taken possession, and he submitted considerable evidence on the subject of

possession. The defendant in error insisted that the purposes for which the company had become organized had become impossible of execution by reason of its inability to make contracts with the railroad companies. Defendant in error also denied that it had become the owner of the property or had taken possession.

As to whether the railway company became the owner of the property by reason of the proceedings having reached the stage mentioned, this is a question of law, and will be presently considered. Upon the questions of fact stated we find from the evidence that the defendant in error had failed to secure contracts with the railroads referred to; also, that it had never taken possession of the property. This latter point, as to the possession, is much disputed in the evidence, but we do not deem it necessary, in this opinion, to go into a discussion of the subject. Suffice it to say that we have read the entire record, and are fully convinced that the conclusion that we have stated is the true one.

The provisions of our statutes applicable to this case appear in the following sections of Shannon's Code, viz.:

"1845. The party seeking to appropriate such land shall file a petition in the circuit court of the county in which the land lies, setting forth, in substance: (1) The parcel of land a portion of which is wanted, and the extent wanted; (2) the name of the owner of such land, or, if unknown, stating the fact; (3) the object for which the land is wanted; (4) a prayer that a

suitable portion of the land may be decreed to the petitioner, and set apart by metes and bounds.

"1846. Notice of this petition shall be given to the owner' of the land, or, if a non-resident of the county, to his agent, at least five days before its presentation."

"1848. All parties having any interest in any way in such land may be made defendants, and the proceedings will only cover and affect the interest of those who are actually made parties, unborn remaindermen being, however, bound by proceedings to. which all living persons in interest are parties.

"1849. After the requisite notice has been given, if no sufficient cause to the contrary is shown, the court shall issue a writ of inquiry of damages to the sheriff commanding him to summon a jury to inquire and assess the damages."

"1855. The jury, before proceeding to act, shall be sworn by the sheriff, fairly and impartially, without favor or affection, to lay off, by metes and bounds, the land required for the proposed improvement, and to inquire and assess the damages.

"1856. The jury will then proceed to examine the ground, and may hear testimony but no argument of counsel, and set apart, by metes and bounds, a sufficient quantity of land for the purposes intended, and assess the damages occasioned to the owner thereby."

"1858. The report of the jury shall be reduced to writing, signed by a majority of the jurors, delivered to the sheriff, and by him returned into court.

"1859. If no objection is made to the report, it is confirmed by the court, and the land decreed to the petitioner, upon payment to the defendants, or to the clerk for their use, of the damages assessed, with costs.

"1860. Either party may object to the report of the jury, and the same may, on good cause shown, be set aside, and a new writ of inquiry awarded.

"1861. Either party may also appeal from the finding of the jury, and, on giving security for costs, have a trial anew, before a jury in the usual way."

"1863. The taking of an appeal does not suspend the operations of the petitioner on the land, provided said petitioner will give bond with good security, to be approved by the clerk, in double the amount of the assessment of the jury of inquest, payable to the defendants, and conditioned to abide by and perform the final judgment in the premises."

"1865. No person, or company, shall, however, enter upon such land for the purpose of actually occupying the right of way, until the damages assessed by the jury of inquest and the costs have been actually paid; or, if an appeal has been taken, until the bond has been given to abide by the final judgment as before provided."

There are some sections which we have omitted. These contain provisions with reference to the qualifications of the jurors, their number, the right of parties in interest to challenge, and the notice to be given to the parties of the time and place for the action of the jury, etc.

We have several cases which, if they do not formulate the proposition, yet are based upon the theory that, where nothing but the assessment of damages is appealed from, this matter only will be affected by the appeal, and the confirmation of the report will in other respects stand, and the petitioner may, by giving bond, take possession of the property and proceed with its work, while in the meanime the litigation on the appeal as to the amount of damages may proceed in the circuit court to its termination. In such a case, when the bond has been given, the right of condemnation of the land involved is regarded as settled, and the litigation as to the damages dissociated therefrom; that is, by such dissociation it takes on the character of a separate litigation for the benefit of the landowner, to enable him to obtain the damages due him.

The dual nature of condemnation proceedings was discussed in the case of *Tennessee Central Railroad Co. v. Campbell,* 109 Tenn., 640, 75 S. W., 1012.

In that case it appeared that the Tennessee Central Railroad Company in the circuit court of Davidson county brought an action in due form to have a portion of the lands of Campbell set apart for right of way for its railroad over which the road had been located, and to have the damages accruing from this appropriation assessed and adjudged; that defendants denied plaintiff's right to maintain its action for want of power to exercise the right of eminent domain, upon several grounds assumed in the statement; that the circuit judge, upon the preliminary trial of the issues

thus made, held that the plaintiff had the right to have the land described in the petition condemned for railroad purposes, and appointed a jury of view to lay it off by metes and bounds, and assess the damages; that at this point the defendant tendered a bill of exceptions to the court's action, and prayed an appeal to the supreme court, which was denied, and thereupon the jury of view proceeded to execute the order of the court, but, when the petition for the writ of *certiorari* was filed, had not yet made their report to court. The question came before this court upon the application for a writ of. *certiorari* and *supersedeas.*

In disposing of this matter the court held that the *certiorari* was a proper proceeding to bring before the court, for review, judgments in condemnation proceedings where the right of plaintiff was for any reason denied, and that where merits were shown a *supersedeas* would be issued to prevent the petitioner from entering upon the premises until the case could be disposed of in the supreme court.

The court then proceeded to determine at what stage the judgment of the circuit court should be treated as so far final as to be reviewed in the manner stated. The court said that the action was dual in its object and results, the petitioner recovering of the defendants the land sought to be appropriated, and the defendants recovering of the plaintiff or petitioner the value of the land and the damages accruing to the residue of their property in consequence of the appropriation, and the construction thereon of the proposed

improvement; "the former of which judgments," said the court, "may be pronounced and executed before the case is tried upon the question of damages."

The court further said:

"Either or both parties on the coming in of the reeport of the first or the second jury, if a second be appointed, may object thereto, and demand and have a trial in the usual manner before the court and a jury of all issues arising in the assessment of the damages the owner of the property may be entitled to recover.

"But the petitioner, notwithstanding the case is undetermined upon the question of damages, and is yet pending for a trial upon this issue, may file a bond, with solvent sureties, in a sum double the amount of the damages assessed by the commissioners, payable to the defendants, and conditioned to abide by and perform the judgment of the court in the premises, and take possession of the property sought to be appropriated, and proceed with the construction of its railroad, or other improvement upon the same. . . . The plaintiff insists that there is no final judgment which can be reviewed by proceedings in error until the issues as to the damages to be recovered are tried, and the amount adjudged, while the defendants insist that the order of the court appointing the commissioners to lay off the land and assess the damages is such a final judgment.

"We do not agree with either contention. There may be two final judgments in this action, which can be re-

viewed by separate proceedings in error prosecuted at different times.

"The circuit court, by implication, clearly has authority, upon the filing of the report of the commissioners, and an appeal therefrom upon the question of damages, to a trial by jury in the court, to award a recovery of the land described in the report, and issue a writ of possession to the plaintiff upon bond being filed as provided by the statute. Judgment for the recovery of the land is final for every purpose. The exact part to be appropriated is ascertained and set apart, and possession given the plaintiff. There is nothing left in relation to this part of the proceedings to be adjudged, and it is immaterial to the plaintiff whether the other branch is ever tried. . . .

"We are, therefore, of opinion that in proceedings of this kind, when the right to appropriate property is contested by the owner, and the case reaches the stage where the petitioner can give bond and take possession of the portion of the premises set apart in the report of the commissioners, and file such bond, the judgment of the circuit court condemning the property may be brought before this court for review by *certiorari,* although the issue as to the damages to be recovered by the defendants, if the appropriation is allowed, is yet pending, untried, in the lower court, and that in a proper case *supersedeas* will issue to restrain the plaintiff from taking possession until the case is here determined.

"This case, however, does not come within this rule. The commissioners have not filed their report, no demand has been made or could be made for a trial by jury in court in the ordinary manner, and no bond has been filed, and it is only then that the judgment becomes final and can be reviewed for the correction of errors."

In our latest case, *Snowden* v. *Shelby Co.*, 118 Tenn., 725, 102 S. W., 90, the court, speaking through Special Justice Henderson, said: "The order of condemnation vests the petitioners with right to the property, and thereby deprives the landowner of its use. Further litigation between the parties is only with regard to the value. While it is optionary with petitioners as to whether they will avail themselves of their right to take possession upon the filing of the report of the jury of view, their failure to exercise this right should not prejudice the rights of the landowner."

In *Tennessee Central R. R. Co.* v. *Campbell*, supra, the date at which there is a final judgment in favor of the petitioner is fixed at the confirmation of the report, and the giving of the bond which is a necessary preliminary to taking possession, unless the money is paid into court.

*Alloway* v. *Nashville*, 88 Tenn., 510, 13 S. W., 123, 8 L. R. A., 123, and *Railroad Co.* v. *Moggridge*, 116 Tenn., 445, 92 S. W., 1114, fix the time at which there is an actual deprivation of the owner at the date when possession is taken pursuant to the order of condemnation and the bond.

In *Snowden* v. *Shelby County* the actual appropria-
tion is fixed at the time the entry of the order of con-
demnation is made regardless of whether a bond· is
made, or the money paid into court, or bond given.

We think the rule laid down in *Tennessee Central
R. R. Co.* v. *Campbell,* supra, is the better and the
sounder one.

Our cases distinctly hold that legislation conferring
the right of eminent domain, to take private property
for public use, is not valid unless just compensation
be provided for, and the mode and manner of ascertain-
ing and enforcing it be fixed and established.  *Water
Co.* v. *Scott,* 111 Tenn., 321, 76 S. W., 888; *Memphis*
v. *Hastings,* 113 Tenn., 142, 86 S. W., 609.  But, if the
statutes which so provide are disregarded by per-
mitting possession to be taken without cash or bond,
then the court violates both the statutes and the consti-
tution.  We are of opinion, therefore, as held in *Ten-
nessee Central R. R. Co.* v. *Campbell,* supra, that the
payment of money or the execution of a bond is an
essential prerequisite to a final judgment for appro-
priation, and to the appropriation itself.  It is only
at this stage that the judgment of condemnation is
final, and that part of the case is dissociated from
the assessment of damages, and the latter proceeds as
a separate litigation.

If the bond required by Shannon's Code, sections
1863 and 1865, be not given, the whole controversy
passes on appeal from the report of the jury of view

into the circuit court to be determined with the final settlement of the question of damages.

Our statutes fix the period at which a nonsuit may be taken. In Shannon's Code, section 4689, it is provided that in jury cases the plaintiff may at any time before the jury retires take a nonsuit, or dismiss his action as to any one or more defendants. In section 4691 it is provided that when the trial is by the court, instead of a jury, the nonsuit or dismissal shall be made before the cause is finally submitted to the court, and not afterwards. Construing the two sections together, it is clear that a nonsuit cannot be taken after the jury has retired to consider its verdict in a jury case, or after the cause has been finally submitted to the court, in a case tried before the court without the intervention of a jury. *Railroad Co. v. Sansom,* 113 Tenn., 683, 84 S. W., 615. We therefore fix the date at which a nonsuit may be taken in a condemnation case in this State at the time when the case has been finally submitted to the jury on a trial in the circuit court before the court and jury, and before the jury has retired to consider of its verdict.

We are not, of course, referring to cases in which the report of the jury of view is confirmed without exception or appeal, and the land is decreed to petitioner. It is too late then for a nonsuit. Nor are we referring to a case in which an appeal is prosecuted only on the subject of damages, and the report of the jury of view is in other respects confirmed, the land decreed to the petitioner, and a bond executed by it for the purpose

of taking possession.    It is then too late to take a non-suit.

In the last two classes of cases, after the adjournment of the term of the court at which such confirmation had been entered and bond given, even before possession actually taken, it would be too late for the petitioner to withdraw, even if it had, at some subsequent time, abandoned its enterprise; since it would be a final judgment as to the appropriation of the land, and nothing would be left but to pay for it.    In such case, of course, the petitioner could at no time take a nonsuit, and prevent the ascertainment of the amount of damages and judgment therefor.    It has been held in this State that after the report of the jury of view, but before its confirmation, and, of course, before bond is given in double the amount of the damages found by the jury of view, the petitioner may take a nonsuit, even though it has incidentally invaded the possession of the defendant, where it is made to appear that the enterprise has become impracticable, and has been abandoned.    *Stevens* v. *Duch River Navigation Co.,* 1 Sneed, 237, 244, 245.    In that case the possession had not been taken under any order of the court, but consisted merely in backing up water so as to drown the mill of defendant.    When the petitioner found that it could not carry out its enterprise, it opened its dam and let the water flow away, which naturally removed most of the damage to the mill.    Of course, petitioner was liable for whatever damages had been inflicted by the water, and it was so held in that case.

Many authorities from other States have been cited by the respective counsel, but the solution of the questions involved depends so entirely upon our own statutes and decisions that such foreign cases can be of little service.

It results that the judgment of the circuit court and of the court of civil appeals must be reversed, and that the cause be remanded for trial on the question of damages and for further proceedings. The defendant in error will pay the costs of the appeal.