SOUTHERN RAILWAY COMPANY *v.* T. M. MICHAELS *et al.*

(*Knoxville.* September Term, 1912.)

1. **EMINENT DOMAIN. Valuation must be made as of the date of the taking, and not before, nor before the adjudication of the right to condemn where the right is disputed.**

In a proceeding, under the eminent domain laws, for the condemnation of land for a public use, the valuation must be made as of the date of the actual taking, and not as of the date of the filing of the petition or the service of the summons, and not before the right of condemnation is adjudged where that right was denied, disputed, and contested. Therefore, where defendants, in a proceeding to condemn mill property, closed their mill and ceased to operate it after the filing of the petition, and for more than four years before the petitioner's appropriation of the land, such abandonment was proper to be considered in assessing the damages.

Case cited and approved: Woodfolk v. Railroad, 2 Swan, 437; Alloway v. Nashville, 88 Tenn., 514; Railroad v. Moggridge, 116 Tenn., 445; Railroad v. Memphis, 126 Tenn., 267; Cunningham v. Railroad, 126 Tenn., 343.

2. **SAME., Potential value of property not being used cannot be estimated as a separate item in assessing the whole value.**

In assessing compensation for land condemned under the eminent domain laws, the potential value of a pocket or harbor in the river in which defendant had stored logs when the land was used for mill purposes could only be estimated as a part of a going concern, and where, upon the filing of the petition and before the taking of the property, the mill was closed, with little probability of its ever being reopened and again operated, the separate value of such pocket as for a future use of the land for a mill site was too speculative to be considered.

Cases cited and approved: Alloway v. Nashville, 88 Tenn., 514; Railroad v. Memphis, 126 Tenn., 267.

Railroad v. Michaels.

### FROM KNOX.

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—E. M. WEBB, Circuit Judge.

JOUROLMON, WELCKER & SMITH, for plaintiff.

A. C. GRIMM and LUCKY, ANDREWS & FOWLER, for defendants.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

The Southern Railway Company filed its petition in the circuit court of Knox county for the purpose of condemning a right of way for the use of its road through the property of the defendant Michaels. The defendant's property has a frontage on the north bank of the Tennessee river of about 1,150 feet and a like frontage on the south side of McCannon street. It is about eighty-five feet wide at the western end, and about 400 feet wide at the eastern end, and contains about six acres. The right of way condemned extends through the property its full length east and west. The defendant had a sawmill located on his property at the time the petition was filed, which he has operated for a num-

ber of years. His mill had a capacity of about 1,250,-000 feet per annum. The north bank of the river adjacent to the mill site formed a pocket in the river on the south side of the mill, which was used by the defendant as a harbor in which to hold logs for the supply of his mill. The harbor has a capacity of about 1,000,000 feet, or practically enough to supply the mill for one year. The course of the defendant's business operations was to purchase logs adjacent to the tributaries of the Tennessee river many miles above Knoxville, and float them down to Knoxville, and harbor them in the pocket adjacent to his mill. In this way he kept his mill supplied with logs.

There is proof tending to show that the construction of the petitioner's road through the defendant's property had the effect to destroy the value of the harbor in connection with the operation of the mill on defendant's land.

The original petition was filed August 15, 1906, containing the usual averments in condemnation proceedings, and especially the averment of power in the petitioner to appropriate the defendant's property under the law of eminent domain. On September 6, 1906, the defendants answered the petition, and denied the power of the petitioner to condemn and appropriate a right of way across their premises. On February 21, 1907, the petitioner filed an amended petition, which is here mentioned only for the purpose of stating that the defendants in their answer to this pleading again denied the

Railroad v. Michaels.

right of the petitioner to take and appropriate a right of way through their property.

Soon after the original petition was filed, the defendants sawed up what logs were anchored in the harbor above referred to and suspended the operation of their mill. The case was pending in the circuit court until April 8, 1911, a period of almost five years. There is no explanation of the cause of this long delay in the preparation and trial of the case, except what appears to be conceded by counsel to the effect that there was an understanding that the trial of this case should await the determination by this court of the similar case of *Southern Railway Company* v. *E. T. Sanford et al.* At all events, on April 8, 1911, the defendants moved the court to dismiss the petition for want of prosecution, whereupon it appears that a writ of inquisition was awarded, and a jury of view appointed, and the case proceeded to final determination without further delay. The first jury of view valued the land sought to be appropriated by petitioner at $3,000, the incidental damage at $500, and the incidental benefits at $500. Upon exception, this report was set aside and a new jury of view was appointed. The second jury estimated the value of the land at $3,000, the incidental damages at $3,800 and the incidental benefits at $800, making a total of $6,000. Both sides appealed from the report of this jury of view, and there was a trial before the circuit judge and a jury in the regular way, and the value of the property taken was fixed at $3,000, the incidental damages at $9,000, with no incidental benefits, and a

judgment was entered upon this verdict in favor of the defendants for $12,000, together with interest from the day of the filing of the original petition, making all together $15,986.

The trial judge instructed the jury in substance that they should estimate the value of the land taken as of the day upon which it was taken, "which is the day on which defendants were served with a legal notice of the institution of the proceedings in this case." The court of civil appeals held that the trial judge was in error in instructing the jury to assess the value of the property as of the day of the filing of the original petition, and held that the property should be valued as of the day when it was actually appropriated by the petitioner; but that court was of opinion that the error of the trial judge was harmless, for the reason that the right of way of the petitioner as located through the defendant's property destroyed the value of the defendant's mill, and also its future use for a mill site, to be operated after the manner that defendant had theretofore operated the mill in question. They modified the judgment of the circuit judge on the question of interest, and allowed interest only from the day of the actual appropriation of the property by the petitioner.

The Southern Railway Company filed its petition for writs of *certiorari*, and assigned the action of the court of civil appeals in holding that the action of the circuit judge was harmless for error. The defendants filed a petition for writs of *certiorari*, and assigned the action of the court of civil appeals in disallowing interest

Railroad v. Michaels.

from the day of the filing of the petition in the court below for error.

That the charge of the circuit judge to the effect that the land sought to be taken should be valued as of the day of the filing of the original petition was error there can be no doubt, upon the authority of *Railroad Co.* v. *Moggridge,* 116 Tenn., 445, 92 S. W., 1114, and *Cunningham* v. *Railroad Co.,* 126 Tenn., 343, 149 S. W., 103.

The petitioner introduced proof tending to show the value of the property at the time it was appropriated by the railway company, and this line of testimony fixes the value at far less than the amount found by the jury. The defendant introduced testimony tending to show the value of the property on the day of the filing of the original petition, at which time the defendant's mill was in full operation as a going business concern. This line of testimony fixes the value of the property at a much larger figure than the testimony offered by the petitioner, and a great many of the witnesses fix its value far above the verdict of the jury. There is proof tending to show that after the defendant abandoned its mill, and before the railway company took possession of its right of way, the plant depreciated materially in its building and machinery. It can be clearly gathered from the testimony that the mill itself was abandoned indefinitely by the defendant, and that it would probably never again be used as it had been before the filing of the original petition of condemnation. At all events, this is a question that should have been submitted to the jury for their consideration in fixing the value of

the defendant's property under the testimony of the witnesses.

It was held in *Woodfolk* v. *Railroad,* 2 Swan, 437, that the proper rule for the valuation of property taken under the law of eminent domain is the fair cash of the land as if the owner were willing to sell and the appropriator were willing to buy that particular quantity at that place and in that form—that is, at the place where the land is taken and in the form in which it exists at the time it is taken. That case establishes the principle that the property is to be offered at its fair cash value and taken *in statu quo.* It was held in *Alloway* v. *Nashville,* 88 Tenn., 514, 13 S. W., 123, 8 L. R. A., 123, that the rule of just compensation required by our constitution includes an appraisement of every element of usefulness and advantage in the property. But this does not mean that all of its capabilities of value are to be estimated separately, and the agregate put down as the true value, for the reason that they do not exist independently of each other, and cannot all be realized at the same time. Likewise, its value is not to be restricted to any particular capability, for the reason that that would not include the other elements of value, and would also tend to make the degree of benefit to the party appropriating the land for particular purposes the real measure of value.

In *Southern Railway* v. *Memphis,* 126 Tenn., 267, 148 S. W., 662, it was held that if property taken for public use possess a particular value to the owner, because of the actual use to which he is devoting it at the

time it is taken, the rule of just compensation requires that the owner be paid for the fair cash value of the property in the form in which it is taken. So that, if property appropriated for public use has potential values merely, which are undeveloped by the owner at the time of the taking, every element of usefulness and advantage which the property possesses is to be taken into view in arriving at its fair cash value. But if the property possess a special value for a particular use, and that value is being utilized by the owner, he is entitled to be compensated for the value of the property to him at the time it is taken.

Therefore, if the defendant's mill was being actually used in connection with the harbor at the time the mill was destroyed by the location of the railway line upon his property, he would be entitled to be compensated for the fair cash value of his mill as a going concern, and in this view the value of the harbor might be singled out in the testimony, and its use to his mill and mill operations could be estimated as a part of the value of the property taken. But if the mill had been abandoned, and the defendant was no longer using the harbor in connection with his mill, it would possess a potential value only, which could not be singled out by the witnesses, and a price placed upon it separate from the other elements of usefulness which the property might possess. In that event, the rule as stated in *Alloway* v. *Nashville* would apply, and in the first event the rule stated in *Railway* v. *Memphis* would apply.

With these cases in mind, it is impossible to say that

the error of the trial judge was harmless. As previously stated, the testimony of the petitioner tended to show the value of the property after the mill had been abandoned, and at the time the land was appropriated by the railway company. The testimony of the defendant tended to show the value of the property when the mill was a going concern, and witnesses sought to state the value of the harbor to the mill while running, in dollars and cents. It needs no argument to show that the value of the harbor as a distinct element of usefulness in the property cannot be singled out and valued separately, when the owner is not devoting it to any particular use. In the first place, any opinion of its value would be merely speculative, and, in the second place, such a rule would require one appropriating the property to pay for a value which exists only potentially, and not actually.

The justice of this holding is well illustrated when the holding of the court in *Cunningham* v. *Railroad*, supra, is considered. In that case it was held that the petitioner might dismiss its petition for condemnation at any time before it executes the bond required by statute, or pays the money into court. In this case there was a delay of nearly five years from the filing of the petition until the execution of the bond, and in that time the defendant's mill was abandoned and ceased to be a going concern. If the petitioner had dismissed its petition, as it clearly had the right to do, and had abandoned its purpose to appropriate defendant's property, it is manifest that the difference between the value of a

Railroad v. Michaels.

going mill and an abandoned one would have fallen upon the defendant. Nor is this an inequitable result, especially under the facts of this case. The petitioner averred its right to take the defendant's property under the law of eminent domain, and this right was denied by the defendant, thereby staying the hand of the petitioner until the question was adjudged. Almost immediately after the filing of the original petition, the defendant abandoned his mill. This loss rightfully and properly should fall upon him. The result is that the judgments of the court of civil appeals and of the circuit court are reversed, and the case remanded for a new trial.