## F. S. HUFF v. DEPARTMENT OF HIGHWAYS & PUBLIC WORKS OF THE STATE OF TENNESSEE.

Eastern Section.   July 23, 1926.

Petition for Certiorari denied by Supreme Court October 13, 1926.

1. **Dismissal and nonsuit.  A nonsuit may be taken at any time before the case is finally submitted to the jury or to the court if the trial is before the court.**
   Under sections 4689 and 4691 of Shannon's Code, a plaintiff may take a nonsuit at any time before the case is finally submitted to the jury in a jury case, or before the case is finally submitted to the court in a case tried before the court without the intervention of the jury.

2. **Eminent domain.  Same rule applies to condemnation suits.**
   In condemnation suits the time at which a nonsuit may be taken is governed by the same rule as in other suits.

3. **Dismissal and non-suit.  Condemnation suits.  Nonsuits after report of jury of view comes too late.**
   In a condemnation suit where the report of the jury of view has been confirmed without exception or appeal and the land is decreed to the petitioner or in cases in which an appeal is prosecuted only on the subject of damages, held it is then too late for a nonsuit.

4. **Eminent domain.  Nonsuit.  Possession given by the statute in the case of a county does not vest such title as will prevent a nonsuit.**
   In an action by the Department of Highways and Public Works to condemn land for road purposes, where the county had filed suit and under the statute immediately taken possession of the property and upon assessment of damages, had taken a nonsuit, held that a mere casual or physical possession in advance of confirmation of the report, however long maintained pending the proceedings, even under the sanction of a statute dispensing with a bond in case of a county, and authorizing such preliminary possession, does not vest such title as would under the statute prevent a dismissal or nonsuit before the cause reaches any final and severable character.  The right to possession taken before confirmation, even if conferred by statute, would terminate upon the abandonment of the enterprise, and is not effective to convey title, even though during the interim the one so placed in possession

may mine and sever valuable material and use it in such a way as that it can not be restored.

5. **Eminent domain. Evidence held to show county had not proceeded too far with it's case to take a nonsuit.**
   In an action of condemnation where the state highway through the county sought to condemn certain gravel pits for use on the highway and where the commission had placed a valuation upon the property after which the highway commission abandoned the project and took a nonsuit, held that they had not proceeded to a point where a nonsuit was barred.

6. **Eminent domain. Damages. Owner of land sought to be condemned is entitled to recover damages caused by temporary possession.**
   Where the state highway commission had taken possession of land sought to be condemned by virtue of the statute and removed and used gravel therefrom and later abandoned the project and took a nonsuit in their condemnation proceedings, held the owner of the land was entitled to damages for the property used while in the possession of the highway commission.

Appeal in Error from Circuit Court of Cocke County; Hon. Jas. L. Drinnon, Judge.

Reversed and remanded.

George W. Gorrell, of Newport, and Susong, Susong & Parvin, of Greeneville, for plaintiff in error.

W. D. McSween, of Newport, for defendant in error.

SNODGRASS, J.. This is a condemnation proceeding, and involves the right of the petitioner, the Department of Highways and Public Works of the State of Tennessee, in advance of any action taken upon the report of the jury of view, to take a nonsuit upon an abandonment of the project of acquiring certain portions of defendant's land, to be used as gravel pits, from which the State would obtain material for use on its highways.

The petition was filed in the circuit court of Cocke county by the said Department of Highways, through its Commissioner, J. G. Creveling, for the use of Cocke county, against the defendant, F. S. Huff, to condemn two certain tracts of land alleged to belong to the defendant, and more particularly described in the petition, one of the parcels said to contain one acre, and the other to contain one and four one-hundredths of an acre.

It was averred that petitioner derives its authority from and files this petition under and by authority of chapter 74 of the published Acts of the General Assembly of Tennessee for the year 1917, and chapter 149 of the published Acts of Tennessee for the year 1919, and chapter 8 of the published Acts of Tennessee for the year 1923, and acts amendatory of said acts, and by virtue and authority of the Acts of Tennessee applicable to eminent domain.

That by authority and provisions of said acts and laws it is made the duty of petitioner to lay out, designate and construct a State System of Highways throughout the various counties of the State,

with State funds, available under the law for that purpose, or with county or Federal aid; that pursuant to said statutes it has designated such State system of highways to be constructed in the State, and as part of such system has designated, laid out and partly constructed State Road No. 9 in and through Cocke county, Tennessee, a part of which said road is also known and designated as Federal Aid Project No. 23, which said road is to be located, and runs, through Cocke county, Tennessee; and, so far as is material for the purpose of this petition, may be described as that part of said road between Newport, Tenn., and the State line between North Carolina and Tennessee at a point near Wolfe Creek.

It was further averred that petitioner is now, and has been for several months, engaged in the work of construction and maintenance of said Federal Aid Project No. 23 and said State Road No. 9, and that for the proper and necessary construction, repair and maintenance of said State Road No. 9 running through Cocke county, Tennessee, it is necessary that it have certain gravel pits or road materials hereinafter described.

It was then averred; that this State Road No. 9 runs through the lands of defendant S. F. Huff in the First Civil District of Cocke county, Tennessee, and situated on said lands of defendant, and adjacent to, and convenient and accessible to said road are certain parcels of land containing road materials and gravel necessary to be used in the construction, repair and maintenance of said road, which lands are described as follows: The petition then sets out an accurate description of the 1 acre and 1.04 acres first referred to, and continues:

Petitioner desires at once to continue with the use of said tracts and parcels of land in the necessary and proper construction, repair and maintenance of said roads, and it avers that such use is a necessary and proper one.

It prays: That a copy of this petition be issued and delivered to defendant, and that notice of its filing be served on the defendant, and notice that it will be presented to the court for hearing on the 3rd Monday in January, 1925; that the lands described by metes and bounds as shown . . . be decreed to petitioner for the purposes herein set forth; that a jury of view be appointed to inquire and assess the damages, if any, to said defendant, and to make report thereof to this court as is required by law; and for all such other, further, different and general relief as they may be entitled to.

Notice was given to defendant, who on the 20th day of January, 1925, filed his answer, admitting substantially every allegation in the petition, and stating that in fact petitioner had appropriated the land described, and averred that said road building material is within less than a half mile of a private siding of the defandant on the Main Line of the Southern Railway Company, and that such road building material was not only very valuable to the petitioners, but that they are

accessible and can be easily and cheaply loaded upon cars and shipped to any part of the State of Tennessee, or to other states for road building purposes, and that the same material is now being used by the state of North Carolina and other states in the construction and maintenance of public highways. It was therefore averred that said material is very valuable to him, and that he is entitled to compensation therefor as road building material, and is entitled to recover for the same at its full value as road building material. It was further averred that the petitioner, upon the filing of its petition on October 30, 1924, immediately took charge of said road building material and is now removing it from the premises; that the amount of said road building material so taken by the petitioner is about three hundred and fifty thousand yards.

At the January term of said circuit court, and on the 30th day of January, 1925, an order was entered, reciting:

That petitioner presented its petition to the court for hearing, which petition prays for the condemnation and appraisement of two certain parcels of land belonging to defendant for road building material, describing them, and that—

The fact further appears to the court from the return of the sheriff that the defendant has been given notice required by law that this petition would be presented to this court, and also that a copy of the petition was at the same time delivered to defendant, and said defendant having answered said petition, and the court being of the opinion that the petitioners have the right to appropriate said parcels of land for road building purposes under the laws of the State of Tennessee, it is ordered by the court that F. M. Stokely, J. A. Fisher, C. L. Ottinger, C. F. Hughes, J. J. Hampton, good and unlawful men, citizens and freeholders of Cocke county, who are not interested in this case or a similar question, be, and they are hereby appointed as a jury of view to inquire and assess the damages to defendant by reason of the taking of his said property.

The order further provided that:

"The said jury before proceeding to act, shall be sworn by the sheriff, to faithfully and impartially, without favor or affection, to lay off, by metes and bounds, the land required for road building purposes, and inquire and assess the damages."

The order gave full instructions in accordance with the terms of the statute as to how to proceed, and make their return, and provided that:

"The clerk will issue a duly certified copy of this decree as a writ of inquiry of damages to the Sheriff of Cocke county, Tennessee, who shall, as the law requires, give the notice to the defendant, and summon said jurors to go upon the premises and assess the damages according to law as herein set out, and he will deliver said writ to

said jurors for their guidance. The Sheriff and said jurors will make their report to the next term of this court.''

An exception was taken by the defendant to the action of the court in approving the decree appointing a jury of view, upon the ground that said decree should have instructed the jury to assess the value of the land taken as material for road building purposes, the order reciting that defendant insisted upon this in open court upon presentation of the decree, and reserves exceptions.

A certified copy of this order appointing the jury of view with instructions was issued to the sheriff, who made his return, as follows:

''Came to hand February 18, 1925, executed by giving notice to the parties as required by law, and summoning the within named jury as required, to meet me upon the premises on April 15, 1925. The jurors appeared at the place and at the time designated, and I administered to them the oath required by law and they proceeded to discharge the duties required, and I herewith submit their report to this court. May 4, 1925. (signed) O. L. Hicks, sheriff.''

On May 4th the jury filed their report, as follows:

''The undersigned, five duly qualified jurors, not interested in the question in this case or any similar one, having been summoned by the sheriff and sworn by him according to the requirements of the statute, to set apart by metes and bounds such amount of two parcels of land of the defendant, F. S. Huff, as is required by the State Highway Department and the county of Cocke for the purpose of constructing, maintaining and repairing what is known as Road No. 9, running through Cocke county, Tennessee, and to fairly and impartially assess the damages occasioned to the owner thereby, reported at the time appointed for us to do so, to-wit April 15, 1925, we went upon the ground as required, examined the two pieces of land carefully, and find that the State Highway Department and the county of Cocke need and require two strips of land belonging to the defendant, F. S. Huff, for the purpose of using the material located thereon for repairing and maintaining said highway. Said two strips of land are particularly and fully described as follows:

1. That certain tract or parcel of land beginning at a point on the right of way of said State Road No. 9, Federal Aid Project No. 23, at a point indicated and designated by the maps and stakes and survey of said road as laid out and surveyed by the engineer of the State Highway Department at Station 447 plus 50 feet, thence along said right of way line S 30 degrees 30' E, 200 feet to station 449 plus 50 feet, on right of way line, thence N. 59 degrees 30' E, 217.8 feet to a stake pointed by a 4'' yellow pine, 3.5 feet from said stake, thence N 30 degrees 30' W, 200 feet to a stake pointed by an 8'' yellow pine, 3 feet from said stake, thence S 59 degrees 30' W, 217.8 feet to the beginning, containing one acre.

2. That certain tract or parcel of land beginning at a point in the center of presen road 17 feet from Southern Railway Company's 'Station 1 Mile' board, one mile West of Wolfe Creek Station, bearing of said board being N 16 degrees 45' E, thence S 13 degrees 30' E, 201.6 feet to a stake pointed by a 4" black oak, 6.5 feet from said stake, thence N 76 degrees 30' W, 225 feet to a stake pointed by a 6" chestnut oak, 6 feet from said stake, thence N 13 degrees 30' W, 201.6 feet to a point in said road, thence along said road S 76 degrees 30' E, 225 feet to the beginning, containing 1.04 acres.

We find that said parcels of land contain valuable road building materials and gravel necessary to be used in the repairing and maintenance of said road. And that said road building material has a certain value for road building purposes.

The amount of land embraced in said two strips is about two acres, and contain about 275,562 yards of road building material, less one-third (1/3) deducted for waste material, and we agree and report the sum of $19,136.25 as the fair and reasonable value of said land so taken for the purpose for which it is taken, and that the defendant, F. S. Huff, is entitled to this sum as the actual value of the property taken and for the purposes taken.

We further find that he is entitled to the further sum of nothing as incidental damages occasioned to his adjoining lands by the taking of this property, and we further find that he received no incidental benefit. Respectfully submitted this April 20, 1925. (signed) C. L. Ottinger, J. A. Fisher, J. J. Hampton, F. M. Stokely, C. F. Hughes.''

On May 16, 1925, petitioner served notice on defendant as follows: ''To F. S. Huff:

This is to advise and notify you that the State Highway Department does not desire to use the land sought to be condemned in the case now pending of the Department of Highways and Public Works of the State of Tennessee, versus Frank S. Huff, in the circuit court of Cocke county, Tennessee, in which certain lands belonging to you in the First Civil District of Cocke county were sought to be condemned. The proposed use of this land will at once be abandoned, and the suit filed for condemnation will be dismissed at the next term of the circuit court of Cocke county.

It is not intended or desired by this dismissal to deprive you of just compensation for any damages done to the land, and such amount as you may be justly entitled to for such damages, if any, will be paid.''

This notice, it seems was entered of record on May 18th, with the following motion:

''Comes the plaintiff, after having given the defendant notice of this motion, and before the report of the jury of view filed herein has in any way been acted upon, and before any title or easement in the lands sought to be condemned herein has been divested out of the

defendant and vested in the plaintiff, and states to the court that the plaintiff does not desire to use the lands herein sought to be condemned, and has and will abandon and relinquish the purpose of making any use of said lands. Plaintiff states further that it is not intended or desired to deprive defendant of just compensation for any damage or injury done to said lands to be condemned, and that any just sum to which defendant may be entitled for any such damages or injuries that may have been incurred will be paid to the defendant.

Plaintiff therefore moves the court to be allowed to take a nonsuit in this case, and to dismiss said suit and strike same from the docket.''

Then on May 25th defendant Huff entered of record the following motion:

''In this cause comes the defendant, F. S. Huff, and moves the court to overrule the plaintiff's motion asking leave of the court to take a voluntary nonsuit and to dismiss their petition in this case, because said motion should not be sustained for the reason that at this stage of the proceedings this defendant has become the actual plaintiff in the case and the plaintiff cannot dismiss or take a nonsuit.

''The plaintiff took immediate possession of the property upon the filing of its petition, and has retained possession of the same, removing the road building material therefrom, as shown by the answer of the defendant in this case, and by the following affidavit of F. S. Huff.''.

The defendant then filed his affidavit, upon which a motion was based to confirm the report of the jury of view, alleging that no exception had been filed to the report.

Resisting this the plaintiff had the following order entered: May 25, 1925.

''In this cause the plaintiff resists and objects to the consideration at this time of the defendant's motion to affirm the verdict of the jury of view because:

''1. There was entered on Monday the first day of this term, after notice given to defendant that such action would be taken, a motion to allow plaintiff to take a nonsuit in this case, which motion is still pending undetermined at the time defendant's motion to affirm the verdict of the jury of view is made.

''2. Because in event the court should disallow plaintiff's motion to be allowed to take a nonsuit, then plaintiff will desire to file exceptions to the report of the jury of view.

''3. No motion is in order and should not be considered or allowed until the motion to take nonsuit is determined.

''This objection is filed and by consent of court is ordered to be entered of record.''

Then on July 1, 1925, the cause came on to be heard before the court upon the entire record in the cause, and particularly upon the motion (1) of the plaintiff entered on May 18, 1925, asking leave of

the court to take a voluntary nonsuit in this cause, and to dismiss its case, and, (2) upon the motion of the defendant S. F. Huff to disallow plaintiff's said motion and to affirm the report of the jury of view made and filed in the record May 4, 1925; upon consideration of which the court was of opinion that the plaintiff was entitled to and had the right to take a voluntary nonsuit and to dismiss its case, and the motion was allowed and the cause accordingly dismissed. The county of Cocke was ordered to pay the costs, the clerk being directed to certify the same to the chairman of the county court for payment.

The motion of the defendant to confirm the report of the jury of view was disallowed, but it was provided that:

"This judgment shall not prejudice the right of the defendant Huff, to bring suit to recover for all damages to, and road material removed, from the lands involved, in this cause by the plaintiff."

It was recited also in the order that upon the hearing of the cause certain affidavits (setting them out) were introduced and read as evidence on behalf of the plaintiff, and certain affidavits were introduced and read as evidence on behalf of defendant, and they were made part of the record.

Whereupon the defendant F. S. Huff moved the court to set aside its judgment against him permitting the plaintiff to take a voluntary nonsuit and dismiss its case, and overruling his motion for an affirmance of the report of the jury of view, and grant him a new trial, for the following reasons:

"I.   The court erred in sustaining the motion of the plaintiff to dismiss its case and take a voluntary nonsuit. Said motion came too late and should not have been sustained.

"II.   The court erred in overruling defendant's motion asking for an affirmance of the report of the jury of view, as there were no exceptions to said report, and no appeal therefrom, and the defendant had, to all intents and purposes, become the plaintiff in the case."

The court overruled said motion, and the defendant excepted, appealed, and has assigned the following as errors:

"I.   The court erred in sustaining the motion of the defendant in error to dismiss its case and take a voluntary nonsuit, because under the Highway Act of 1919, chapter 149, the petitioner was given the right of immediate entry upon said premises upon the filing of its petition, which right is exercised by taking immediate possession of the property and removing the road building material therefrom. Under the Acts in question no bond is required of the State or county, as in other condemnation proceedings, neither is the State or county required to await the report of the jury of view before taking possession, but the Acts under which petitioner brought this proceeding give it the extraordinary right of entering upon the premises without bond. It, therefore, acquired title to said premises immediately and nothing remained to do except assess the defendant's dam-

ages. Petitioner continued to work and remove said road building material from the date of the filing of its petition up to Saturday night before the convening of the circuit court on Monday, at which time the report of the jury of view stood for confirmation, and its motion to take a voluntary nonsuit and dismiss its case came too late and the Circuit Judge should have overruled and disallowed the same.

"II. The court erred in overruling defendant's motion asking for an affirmance of the report of the jury of view, because there were no exceptions to said report and no appeal therefrom, and the plaintiff in error was entitled to a confirmation of said report. The petitioner had taken his property on October 30, 1924, and had been in continuous possession of the same, and all this time admittedly removing the valuable road building material therefrom, and there was nothing to do but to assess the damages due the defendant Huff, because, in his answer, he had admitted every jurisdictional fact entitling the petitioner to a recovery of the land, leaving nothing to do but to assess the damages. This action was dual in its objects, the petitioner seeking to recover the land of the defendant Huff for road building purposes, and the defendant seeking to recover of the petitioner the value of the land and road building material taken."

It appears from the record that the Department of Highways got along serenely with the acquisition of these gravel pits up to the filing of the report of the jury of view, from which it is manifest that they had caught a tartar, and was compelled to apply to the court to help them turn loose by abandoning the enterprise, and the only question that has concerned this court is, or has been, whether or not they could do so without paying for the yards of gravel that they took from these pits during the condemnation proceedings, and up to the notice served upon the defendant that they would abandon then enterprise. They avowed a willingness to pay for this amount, but the case was dismissed, though without prejudice, it was said, without any further effort to ascertain the value of the yardage so taken, or any judgment against the county for this conceded quantity or road material which it had taken and used, and which the county was in no situation to abandon or return.

Shannon's Code, section 4689, provides that in jury cases the plaintiff may at any time before the jury retires take a nonsuit or dismiss his action as to any one or more defendants, and section 4691 provides, that when the trial is by the court, instead of a jury, the nonsuit or dismissal shall be made before the cause is finally submitted to the court, and not afterwards.

In Cunningham v. Terminal Co., 126 Tenn., 343-356, a condemnation case, the court said: "construing the two sections together, it is clear that a nonsuit cannot be taken after the jury has retired to consider its verdict in a jury case, or after the cause has been finally submitted to the court, in a case tried before the court without the inter-

vention of a jury. Railroad v. Sansom, 113 Tenn., 84, S. W., 615. We therefore fix the date at which a nonsuit may be taken in a condemnation case in this State at the time when the case has been finally submitted to the jury on a trial in the circuit court before the court and jury, and before the jury has retired to consider of its verdict.'' The court continued:

''We are not, of course, referring to cases in which the report of the jury of view is confirmed without exception or appeal and the land is decreed to the petitioner. It is too late then for a nonsuit. Nor are we referring to a case in which an appeal is prosecuted only on the subject of damages, and the report of the jury of view is in other respects confirmed, the land decreed to petitioner, and a bond executed by it for the purpose of taking. It is then too late for a nonsuit.''

In the case from which the above excerpts are taken, the motion to dismiss was made after the proceedings had reached such a stage as that a jury of view had been appointed, had made its report fixing the value of the property, and after an order had been entered confirming the report of the jury, and after an appeal from this finding by the defendant in error to the circuit for a trial before a regular jury upon the subject of damages, and also after the defendant in error had given a bond in double the amount of the finding of the jury payable to plaintiff in error; and also an ordinary appeal bond in the penalty $250. Under the circumstances the court held that the motion to dismiss came too late, notwithstanding the abandonment of the enterprise, and reversed the action of the circuit court and Court of Civil Appeals sustaining same and remanded the case for further proceedings; because it was held that at that stage, upon the report being confirmed, and bond given, title vested, and the case from that time on became a question of damages only.

Under a very full review of our condemnation statutes, the court held that actions of this kind are dual in their nature, or take on that character, and that ''where nothing but the assessment of damages is appealed from, this matter only will be affected by the appeal, and the confirmation of the report will in other respects stand, and the petitioner may, by giving bond, take possession of the property and proceed with its work, while in the meantime the litigation on the appeal as to the amount of damages may proceed in the circuit court to its termination. In such a case when the bond has been given the right of condemnation of the land involved is regarded as settled, and the litigation as to the damages dissociated therefrom, that is, by such dissociation it takes on the character of a separate litigation for the benefit of the land owner, to enable him to obtain the damages due him.'' The court referred to the case of Tennessee Central Railroad Co. v. Campbell, 109 Tenn., 640, 75 S. W., 1012, and held that: ''There may be two final judgments in this action, which can

be secured by separate proceedings in error prosecuted at different times;" that "the circuit court, by implication, clearly has authority, upon the filing of the report of the commissioners, and an appeal therefrom upon the question of damages, to a trial by jury in the court, to award a recovery of the land described in the report, and issue a writ of possession to the plaintiff upon bond being filed as provided by statute. Judgment for the recovery of the land is final for every purpose. The exact part to be appropriated is ascertained and set apart, and possession given the plaintiff. There is nothing left in relation to this part of the proceedings to be adjudged, and it is immaterial to the plaintiff whether the other branch is ever tried. . . . We are therefore of opinion that in proceedings of this kind, when the right to appropriate property is contested by the owner, and the case reaches the stage where the petitioner can give bond and take possession of the portion of the premises set apart in the report of the commissioners, and files such bond, the judgment of the circuit court condemning the property may be brought before this court for review by certiorari, although the issue as to damages to be recovered by the defendant, if the appropriation is allowed, is yet pending, untried, in the lower court, and that in a proper case supersedeas will issue to restrain the plaintiff from taking possession until the case is here determined. This case, however, does not come within this rule. The commissioners have not filed their report. No demand has been made or could be made for a trial by jury in court in the ordinary manner, and no bond has been filed, and it is only then that the judgment becomes final and can be reviewed for the correction of errors."

The court then approves the case of Tennessee Central Railroad v. Campbell, supra, as holding that a final judgment in favor of the petitioner is fixed at the confirmation of the report, and the giving of the bond which is a necessary preliminary to taking possession, unless the money is paid into court, as the better rule; disapproved the case of Alloway v. Nashville, 88 Tenn., 510, and Railroad Co. v. Moggridge, 116 Tenn., 445, and Snowden v. Shelby county, fixing an earlier date, and announced its conclusions, fixing definitely the time at which in this character of case a nonsuit or dismissal may be taken, in the language of the paragraphs first quoted in this opinion.

It is manifest, therefore, that a mere casual or physical possession in advance of confirmation of the report, however long maintained pending the proceedings, even under the sanction of a statute dispensing with a bond in case of a county, and authorizing such preliminary possession, does not vest such title as would under the statute prevent a dismissal or nonsuit before the cause reaches any final and severable character. The right to possession taken before confirmation, even if conferred by statute, would terminate upon the abandonment of the enterprise, and is not effective to convey title, even though during the interim the one so placed in possession may mine and sever

valuable material and use it in such a way as that it can not be restored, thus committing a waste for which it might be liable in an appropriate action.

It will be observed, that even if the statute in lieu of bond be valid and effective, it is only designed to take the place of a bond, the execution of which only makes effective the order of confirmation as vesting title, in cases where the right to condemn is not controverted, and only the issue as to damages contested. So that, in any event, confirmation is an essential prerequisite to the acquisition of title from which there can be no retreat, as established by the case of Cunningham v. Terminal Co., supra. If the case of Johnson City v. Milling Co., 7 Higgins, 490, is good law, it must be so because the possession referred to must be that possession coupled with and after a confirmation, or what was adjudged to be an equivalent in that case, because the petition, which was for writ of error coram nobis, alleged that by virtue of an agreement, as well as by suit, Johnson City took possession, the court holding that this must be treated as having been done by consent, as the court would not presume an unlawful entry. Combatting the insistence that no jury of view had ever made a report, that there was no confirmation of the report, and no vestiture of title in the condemning party, the court said:

"Again referring to our duty of assuming the facts to be as stated in the petition, we have the case of a condemning party who is given possession with mere reservation of the question of damages to be subsequently determined. In such case it is unnecessary to have formal entry or a full report and vestiture of title; or as for that matter it is wholly unnecessary to have any jury of view at all. The only thing left to do is to have the question of damages determined by a common law jury."

With reference to the agreement, the court said:

"We interpret the agreement made with reference to the pending case as a stipulation that the only questions to be determined, after favorable termination of the equity suit, would be the amount of damages to which the defendants were entitled, and the proportion in which the damages should be shared. It was recited in the agreement in substance that the suit was properly brought and that the defendants were the owners of the land, and that each might show his respective interest, and that damages should be accordingly adjudged."

So the petition of Johnson City to supersede the order of the circuit court sustaining the petition for writ of error coram nobis and directing the writ embracing the issues to be returnable and triable at the succeeding term was denied, and the cause was directed to stand in the lower court for trial upon the petition for writ of error coram nobis.

In conclusion, the court said:

"If it turns out on final hearing that Johnson City never took possession of the property in question, nor acquired title to it, then its order of dismissal must stand, for the reason that at such juncture and in such condition of things it would have the absolute right to discontinue, and the question of good faith or surprise would be wholly immaterial. Our conclusion is, that if it has taken possession because of the suit and the agreement, it was too late for it to assume the position of a plaintiff and then dismiss."

If the court meant that any possession taken even under the statute in advance of the confirmation or appeal from the jury's award would preclude a dismissal, especially where the project was abandoned, then we think such holding is in conflict with the opinion of the Supreme Court in the case of Cunningham v. Terminal Co., supra. In other words, that the case does not become the suit for damages of the defendant until it passes the irrevocable stage where the taking is complete by vesting of title in some way, and execution of a bond or payment in cash, in cases where such bond or cash is required, or the confirmation and vesting of title in cases like that of the county or State, where no bond is required.

The court in the Johnson City v. Milling Co., case, supra, drew a distinction between the abandonment of the enterprise and the mere abandonment of the suit, and stated that the former is generally allowed, while the latter is denied, where possession has been taken and the property used. But we think that as the petitioners had taken actual possession of the land sought to be appropriated as gravel pits, and during such authorized possession under the statute had actually severed, appropriated and used ———— yards of gravel, and had thus in the circumstance of its appropriation and use upon the roads acquired title to the gravel so appropriated, and in doing so, in the abandonment of any further acquisition of the property may have effected some possible incidental injury to the remaining lands, it should be treated as equivalent to a confirmation of title by order of court, and, having been invested with title to such as had been taken, petitioner should not therefore have been allowed to dismiss the cause entirely, or to take a nonsuit so as to avoid having the damages determined in this cause for the full value of the gravel so taken and used, and any incidental damages that may have resulted to the remainder of the property as a consequence.

Barring what gravel had been taken we think the petitioners had the right, and it was their duty to abandon the project of acquiring these two small parcels as gravel pits from which to obtain material for the construction and repair of the roads that were being built, when it was determined that it was at too great a cost, and especially so when cheaper material could be procured, as in this cause. We think the reasoning in the case of Stevens, et al., v. Duck River Navi-

gation Co., 1 Sneed, 243, is applicable here, as the principle is the same. In that case it was said:

"It seems to be assumed, by the counsel for the plaintiffs, that in all cases of injury to property, resulting from the erection of a dam or other improvement made by the company, whether such injury be only partial, or amount to a total destruction of the value of the property, the owner has a right, by the provision of the charter, to demand an assessment of the full value of the property by the jury, and a compulsory sale thereof to the company, by the judgment of the court; and this right becoming fixed by the assessment made by the jury, it cannot be affected by the subsequent acts of the company, though amounting to an entire abandonment of the project contemplated by the charter, and a complete removal of the cause of injury by the abatement of the dam, or throwing open the lock.

"We cannot assent to this reasoning. On the contrary, we think that an utter abandonment of the contemplated scheme of improvement, in good faith, at any time before the final judgment of the court upon the report of the jury, would take away the right of the party injured to insist upon the value of his property, and transfer of the title to the company, and leave him to recover such damages, under all the circumstances of the case, as he may have sustained, by the erection of a dam, during its continuance."

Here it is insisted by Mr. Huff, who is, to the extent of what has been irrevocably appropriated, the real plaintiff, that because physical possession of the two parcels sought was taken under the authority of the statute, that his acquiescence in the claim thus vested the possessor with title to the whole, without a transfer or vestiture by order of the court. But this contention is unsound. The process detailed is not equivalent to any rule of law under which title to real estate is transferred. It requires nothing but an abandonment and withdrawal to completely invest the claimant for damages with all the title that he had before, except such portions thereof as had been severed and placed upon the roads and, losing its identity, had so been effectually transferred.

In the case just quoted it is true that the mill owners themselves started the proceeding, as under Section 1866 of Shannon's Code, Mr. Huff could have done, had the county not begun the proceeding through the Highway Commission, which the statute authorized. The improvement company had erected a dam, which flooded the mill property, and had thus taken possession, resulting in the petition by the owners and the appointment of a jury of view, who reported the damages. In the meantime the improvement company discovered it could not proceed with the work, abandoning same, and ordering the gates opened. The waters receding left the mill property free, but damaged. At the term to which the jury reported the improvement company moved to quash the writ, which was equivalent to a motion

to dismiss as in this case. The motion was overruled and the report of the jury confirmed. The Supreme Court reversed the action of the lower court, holding that the parties could bonafiedly abandon before final judgment, but yet held that a new inquiry might be made as to the proper damages.

We think that the effort to abandon the enterprise of securing the gravel pits was bonafide and upon sufficient reason, and that the petitioners were entitled to dismiss as to all of that not appropriated; but as regarding the yardage used, petitioners obtained title to that, and that too by virtue of the proceedings under which it was sought, just as effectively as if what they had used had been confirmed to them by order of court or by transfer. As they had taken and used it in the construction or repair of the road, it could not, therefore, be identified or restored. This inevitable action of the petitioners was to this extent equivalent to a confirmation or transfer, and therefore to this extent the suit became the action of Huff, the landowner, for his benefit, and petitioner was not entitled to dismiss the entire suit. For the same reason the defendant was not entitled to have the report of the jury confirmed.

This is really the suit of the county, through the State Highway Commission, which interevenes under the statute for its benefit, and when the State or its officers avails itself of the privilege to sue so granted by the statute, there is an implied limitation that it must abide the ordinary consequences of the litigation, and it cannot dismiss upon any other terms than those accorded the ordinary litigants.

The assignment that the circuit court was in error in refusing to confirm the report is overruled, but the assignment that the court was in error in allowing petitioners to dismiss their suit, even without prejudice, is sustained. The cause is reversed, the proceedings of the jury set aside, and the cause remanded in order that a new writ will issue to determine the value of the yardage taken, and the incidental damages, if any, to the remainder of the land; Section 1860 of Shannon's Code, providing that either party may object to the report of the jury, and the same may on good cause shown be set aside and a new writ of inquiry awarded.

Cocke county will pay the costs of this appeal, for which a judgment is given against it in favor of said Huff, and the clerk of this court will certify the same to the county court of said county for payment.

Portrum and Thompson, JJ., concur.