BRIZENDINE *v.* STATE.

(*Nashville.*   December 20, 1899.)

APPEAL.   *Contempt.*

Appeal does not lie from a judgment inflicting punishment for contempt committed in the presence of the Court.   The remedy against arbitrary and oppressive judgments in such cases is by *habeas corpus,* or by writ of error or certiorari, with supersedeas to be granted by this Court.

Cases cited: Ex parte Martin, 5 Yer., 456; Ragsdale *v.* State, 2 Swan, 415; State *v.* Galloway, 5 Cold., 327; Hundhausen *v.* Ins. Co., 5 Heis., 702; Brooks *v.* Fleming, 6 Bax., 331; State *v.* Warner, 13 Lea, 52.

FROM SUMNER.

Appeal in error from Circuit Court of Sumner County.  A. H. MUNFORD, J.

J. J. TURNER for Brizendine.

ATTORNEY-GENERAL PICKLE for State.

BEARD, J.  The plaintiff in error was a witness in his own behalf in a case prosecuted against him for a violation of a criminal statute.  While undergoing a cross-examination by an attorney rep-

resenting the State, in answering a proper ques-
tion put to him, he was guilty of a flagrant
contempt committed in the presence of the Court.
For this contempt he was fined $25 and sen-
tenced to ten days' imprisonment. Subsequently,
for reasons satisfactory to the Circuit Judge, he
was relieved of the imprisonment, but the fine
was permitted to stand. From the judgment of
the Court inflicting this fine he prayed and per-
fected an appeal to this Court.

Was plaintiff in error entitled to this appeal?
Beginning as early as 1823 or 1824 with
the unreported case of *Ex parte Shumate*, it
was held that a writ of error did not lie from
a judgment for contempt committed in the face
of the Court. Again, in 1830, in *Ex parte Mar-
tin*, 5 Yerger, 456, the Court, through Judge
Catron, referring to the Shumate case as one in
which much care had been bestowed upon the
opinion, affirmed the soundness of the rule an-
nounced in it and denied the right of appeal
in such a case. In *Ragsdale* v. *State*, 2 Swan,
415, this Court once more recognized a judgment
in contempt as one from which no appeal would
lie. In this last case this statement was a dictum,
but in 1868, in the case of *The State* v. *Gallo-
way*, 5 Cold., 327, the direct question was pre-
sented, and it was then held, after a careful ex-
amination, that, upon sound reason and well-estab-
lished authority, a writ of error would not lie

Brizendine *v.* State.

from such a judgment. In that case it is said that "the power ·to punish for contempt is absolutely essential to the protection and existence of Courts. To be effectual, the power must be instant and inevitable."

These cases (except that in 2 Swan) involved the right of appeal, or to a writ of error from a judgment for contempt committed in the face of the Court. This Court, however, declined, in *Hundhausen* v. *U. S. F. & M. Ins. Co.,* 5 Heis., to apply the rule announced in them to a case of contempt for the violation of orders and decrees of the Court—that is, to cases involving contempt committed other than in its presence, and it was then held that writs of error and supersedeas were available to the party who desired the judgment in such a case reviewed. In line with this was the case of *Brooks* v. *Fleming,* 6 Bax., 331, decided by this Court in 1873. There the proceeding was for contempt in the violation of an injunction, and it was said that "the right of appeal . . . is quite clear where the contempt was not committed in the face of the Court." But the Court added: "It will not lie in such case, ·. . . for the strong reasons instanced by Judge Colim (Catron?) in . . . *Andrew L. Martin, ex parte,* 5 Yerg., 457, as well as for the additional one that the entire matter of contempt can ·never be presented to any Court just as it occurred, except to the

one in whose presence" it did take place, "as, for example, the language of the party may be of itself abstractly unobjectionable, while the manner, the look, the tone of voice, the gesture may make a case of flagrant contempt. . . . Not so, however, in cases in which the contempt consists in doing a forbidden act, or in omitting to do an act commanded. These are contempts not in the presence of the Court, and can only be brought to its knowledge and invoke its action upon the testimony of others."

It will thus be seen that from 1823 to 1873 there was an unbroken line of authority in this State that judgments for contempt such as we have in the present case, were not reviewable in this Court upon appeal or writ of error.

It is insisted, however, that the case of *State v. Warner,* 13 Lea, 52, overturned the old and established a new rule in Tennessee, under which all judgments for contempt, wherever committed, are reviewable by this Court to the same extent as are other judgments pronounced by the inferior Courts.

From the statement of facts found in the opinion in that case, it seems that Warner, served with a subpœna issued at the instance and upon the order of the Attorney-general, appeared before the grand jury, and when asked by that body and the Attorney-general if he knew of any gambling in a clubroom located over his saloon, de-

Brizendine v. State.

clined to answer, assigning as reason for so doing that he was the president of the club which frequented the room and that by answering he might criminate himself. Upon this refusal he was taken before the Judge of the Court, who instructed him that he would not render himself liable to prosecution by any answer to a question with regard to gaming he might make to the grand jury. Still declining to answer, he was committed for contempt of Court. The case came before this Court upon an application for writ of error and certiorari and also for a supersedeas of the order of committal.

In the disposition of the cause in this Court, three opinions were delivered—one by Judge Turney, another by Deaderick, C. J., concurred in by Judge Cooke, and the third a dissenting opinion by Judge Freeman.

In the opinion of Judge Turney, the first question discussed by him is: "Was the plaintiff in error before the grand jury as the law contemplates so as to subject him to punishment for a refusal to answer questions?" This question, after a careful examination of the statutes bearing on the subject, he answers in the negative. His words are: "It follows that Warner was not before the grand jury and Court by due process of law. While he did appear in obedience to what purported to be a subpœna, that subpœna was unauthorized, was a nullity, and gave the Court no

jurisdiction." Again he says: "Without having been
lawfully summoned and sworn, he might have re-
fused to testify in any case, civil or criminal,
and the Court would have been powerless to com-
pel or punish. . . . The record fails to
show the witness was either legally summoned or
sworn."

This was the real issue in the case. This is
made very clear from the opinion delivered by
Deaderick, C. J., concurred in by Cooke, Sp. J.
The Chief Justice, in that opinion, says: "The
Attorney-general has no power to direct witnesses
in such cases to be sent before the grand jury,
nor have the Courts. . . . This power re-
sides in the grand jury only, and then by sub-
pœna issued by their order. So that to make
disobedience of an order of Court contempt, the
order must be one which the Court has the
power to make; it must, in the language of the
statute, be a 'lawful order.' " For this reason the
learned Chief Justice concluded that the Court be-
low was without jurisdiction to make the order
of committal, and for this reason he concurred
"in the conclusion announced by Judge Turney,
that defendant should be discharged." A majority
of the Court also agreed that writs of error, of
certiorari and supersedeas, were properly issued,
but the right of appeal was not involved and
was not decided. This holding as to the right

of the contemnor to a writ of error, did modify the old rule in that regard, but no further.

We think a sound public policy requires an adherence to the rule so long recognized in this State to this extent, at least, that no appeal should be permitted from a judgment for contempt such as we have in this record.

To permit a party guilty of an outrage upon the decorum of the Court, or who, by his contumacy exhibited in its presence, seeks to defy and bring discredit on its officers or its lawful methods, when punished by fine or imprisonment, or both, to stay the hand of the Court, while the matter is pending on appeal, would go far to paralyze the inferior Judges in the discharge of their official functions, and to put them at the mercy of those who willfully and pertinaciously resist established authority.

This Court has gone far enough in allowing an exception to the rule, as applied in *Hundhausen* v. *U. S. F. & M. Ins. Co.* and *Brooks* v. *Fleming,* and *Warner* v. *State, supra,* and will go no further. Nor are parties, by reason of adherence to this rule, placed at disadvantage, or left unprotected as against arbitrary and oppressive judgments for contempt. The writs of certiorari and supersedeas and the writ of error and supersedeas to be granted alone by this Court or one of its Judges, and the writ of *habeas corpus,* afford full remedies for relief.

The result is that the appeal in this case is dismissed with costs.

It is proper to say that even if this case was rightly before us, we discover nothing in the record which would warrant us in interfering with the judgment complained of.