Tennessee  Central  Railroad  Co.  v.  Campbell.

TENNESSEE CENTRAL RAILROAD CO. *v.* CAMPBELL *et al.*

(*Nashville.*   December Term, 1902.)

1. **CERTIORARI. WRIT OF.** Imbedded in the common
   law.

   The writ of *certiorari* does not owe its existence to constitu-
   tional provision or statutory enactment. It originated in and
   came to us with the common law, and it is one of the most
   efficient remedies provided by that admirable system of
   jurisprudence whose boast is that there is no wrong with-
   out a remedy. (*Post, p.* 645.)

2. **SAME. SUPREME COURT.** Has inherent power to
   grant.

   The supreme court of this State with supervisory jurisdiction
   over the proceedings and judgments of inferior tribunals,
   has· *inherent power* to grant the writ of *certiorari* whenever
   necessary to enforce its jurisdiction. (*Post, p.* ——.)

3. **SAME.** Same. Not restricted by constitution.

   The right of the supreme court to grant *certiorari*, in proper
   cases, is not restricted by the constitutional provision that
   judges of inferior courts of law and equity shall have power
   to issue such writs in civil cases to remove them from any
   inferior jurisdiction into a court of law. (*Post, pp.* 645-646.)

4. **SAME. SAME.** Has also full statutory power to grant.

   In addition to its inherent power the supreme court has also
   full statutory authority to issue the writ of *certiorari*, when-
   ever authorized by law, and in all cases where an inferior
   tribunal exercising judicial functions has exceeded its jur-
   isdiction or is acting illegally, when, in the judgment of the
   court, there is no other plain, speedy or adequate remedy at
   law, and whenever such writ is necessary for the exercise

Tennessee Central Railroad Co. v. Campbell.

and enforcement of the jurisdiction of the supreme court. (*Post, pp.* 646-647.)

Code cited and construed:   Secs. 4834, 4853, 6329, 6336 (S); 3106, 3123, 3124, 4496, 4503 (1858).

5.  **SAME.   Is a distinct and substantive mode of review by the supreme court.**

*Certiorari*, like "appeal," "appeal in the nature of a writ of error," and "writ of error" is a distinct and substantive mode of review by which the judgment of inferior tribunals may ·be reviewed and ·corrected by the supreme court, and, in proper cases, is as much a matter of common right as either of the others.   And of its use for such purposes, the decisions of the supreme court furnish numerous precedents.   (*Post, p.* 647.)

Cases cited:   Durham *v.* United States, 4 Hayw., 69; Kearney *v.* Jackson, 1 Yerg., 294; Railroad *v.* Bate, 12 Lea, 573; Warner *v.* State, 13 Lea, 52; Johnson *v.* Harris, 16 Lea, 136; State *v.* Taxing District, 16 Lea, 245; Brizendine *v.* State, 103 Tenn., 677.

6.  **SAME.   No general rule for its use, but peculiarly applicable to statutory proceedings in derogation of the common law.**

The cases in which it will lie can not be defined.   To do so would destroy its comprehensiveness and its usefulness.   But it is peculiarly applicable ·to a statutory proceeding, such as condemnation proceedings, wherein judgments may be pronounced against a defendant and executed, by an appropriation of his land, before final disposition of the entire case is made, and from which no appeal or writ of error will lie. (*Post, p.* 648.)

7.  **SAME.   Will issue to review final judgments in condemnation proceedings.   Supersedeas.**

*Certiorari* will issue to bring before the supreme court for review judgments in condemnation proceedings appropriating the lands of citizens for public purposes, where the right to do so is for any reason denied, but such judgments must be final in their · nature; and, where merits .are shown, a

*supersedeas* will issue to prevent the actual appropriation of the property until the right to condemn is determined. (*Post,* p. 649.)

**8. FINAL JUDGMENT.** In proceedings to cond·mn land, what is.

Proceedings to condemn land are dual in their nature and results. To the plaintiff is adjudged the land sought to be appropriated, to the defendant the damages recoverable therefor. The judgment in favor of plaintiff definitely ascertains the exact part of the land condemned to his use, places him in possession thereof, and, notwithstanding the damages of defendant are yet to be ascertained and adjudged, is final for every purpose and entitles defendant to have the question of plaintiff's power to exercise the right of eminent domain tried and determined by the highest court of the State before he is deprived of either the possession or title to his property, and, in a case showing merits, to a *supersedeas* staying execution of such judgment until final determination in the supreme court. (*Post,* pp. 649-653.)

Code construed: Secs. 1844-1867 (S); 1325-1348 (1858).

**9. SAME.** What is not.

In a proceeding to condemn land for railroad purposes there is no final judgment reviewable by *certiorari* until judgment is rendered for the recovery of the land by plaintiff, and a determination by the trial court that plaintiff had the right to have the land condemned for such purposes is not such final and reviewable judgment. (*Post,* pp. 651-653.)

Construing code: *Idem.*

**10. CERTIORARI.** Supreme Court. Case in judgment.

Proceedings by railroad company to condemn defendant's land. Defendant denies plaintiff's power to exercise the right of eminent domain. Upon the preliminary trial of this issue, the circuit judge held that the plaintiff had the right to condemn for railroad purposes the lands described in its petition and appointed commissioners to set it apart and assess the damages accruing to defendant. The report of the commissioners has not been made, but they are proceeding to ex-

Tennessee Central Railroad Co. v. Campbell.

ecute the order of the court. Defendant tendered a bill of exceptions and prayed an appeal which was denied. Defendant filed a petition for *certiorari* to review the action of the circuit judge upholding plaintiff's power of eminent domain.

HELD: *1st*, That the supreme court has power to grant writs of *certiorari* to review final judgments in proceedings to condemn land. *2nd*, That the application in this case is premature, there being no final judgment for the recovery of the land.

---

FROM DAVIDSON.

---

Petition for *certiorari* and *supersedeas* to the Circuit Court of Davidson County.

JOHN J. VERTREES, J. C. BRADFORD, J. S. PILCHER, T. M. STEGER, T. H. MALONE, JR., J. H. ACKLEN and J. A. RYAN, for petitioners, Campbell *et al.*

PITTS & WITHERSPOON, for Railroad Co.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

This is an action brought by the Tennessee Central Railroad Company in the circuit court of Davidson county by petition, in the form prescribed by the statutes in relation to such proceedings, to have a portion of the lands of the defendants condemned and set apart for a right of way for its railroad, which it had located over the same, and the damages accruing

to the defendants from such appropriation assessed and adjudged.

· The defendants made defense by answer, denying the right of the plaintiff to maintain its action for want of power to exercise the right of eminent domain, and to appropriate the lands in question, upon several grounds, not necessary to be stated.

The circuit judge, upon the preliminary trial of the issues thus made, held that the plaintiff had the right to have the land described in its petition condemned for railroad purposes, and appointed a jury or commissioners to lay it off by metes and bounds, and assess the damages, actual and incidental, accruing to the defendants in consequence of such appropriation.

The defendants tendered a bill of exceptions to this action of the court, and prayed an appeal to this court, which was denied; and the commissioners are proceeding to execute the order of the court in the premises, but as yet have filed no report of their action.

The case is now before us upon a petition for writs of *certiorari* and *supersedeas* to bring it into this court to review this judgment of the trial court, and stay the proceedings thereunder until it shall be here heard and determined.

This application is resisted by the plaintiff, insisting that this court can not acquire or take jurisdiction of cases for the correction of errors in judgments

and decrees of trial courts otherwise than by appeal, appeal in the nature of a writ of error, and writ of error, and that the writ of *certiorari* will not lie for this purpose, and, further, that the judgment of the circuit court in this case is not final, and can not be reviewed by any proceeding in error.

The writ of *certiorari* does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence.

This court, the highest tribunal in the State, with appellate and supervisory jurisdiction over proceedings and judgments of all inferior courts, has the inherent power to grant it whenever necessary in the exercise and enforcement of this jurisdiction. It is not restricted from its use by section 10 of article 6 of the constitution, providing that the judges of inferior courts of law and equity shall have power to issue it in civil cases to remove them from any inferior jurisdiction into a court of law. This provision was only intended as a guarantee of the continuance of a power with which these judges were already vested.

The use of the writ was originally confined to criminal cases, and its extension by the judges of this class of the courts of North Carolina, when Tennessee was yet a part of that State, to civil cases, was controverted, for which reason, upon the organization of

this State, in order to settle the matter beyond all controversy, a provision was placed in its first constitution in substance the same as that contained in the present constitution, and above stated. It was not doubted that the highest court created by that and subsequent constitutions would have this power, and no provision was thought or was necessary upon the subject. While there is no doubt of the inherent power of this court to use this writ as a mode of exercising and enforcing its jurisdiction, yet statutory authority to do so is not wanting. It is fully authorized by the general provisions contained in the Code for the correction of errors in the judgments of inferior courts, which include *certiorari* as one of the means by which this may be done; and it is there provided that it may be granted whenever authorized by law, and in all cases where an inferior tribunal exercising judicial functions has exceeded its jurisdiction or is acting illegally, when, in the judgment of the court, there is no other plain, speedy or adequate remedy, and that it will lie on a suggestion of diminution, where no appeal is given, as a substitute for an appeal, and instead of a writ of error. Code 1858, secs. 3106, 3123, 3124; Shannon's Code, secs. 4834, 4853, 4854.

The power is also expressly conferred by the provisions of the Code on the subject of the appellate jurisdiction of this court, which provide for appeals, writs of error, or other proceedings for the correction of errors, and the authority to use all writs and

Tennessee Central Railroad Co. v. Campbell.

process necessary for the exercise and enforcement of its jurisdiction.   Code 1858, secs. 4496-4503; Shannon's Code, secs. 6329, 6336.

There are then four well-established, substantive modes by which the judgments of inferior courts may be reviewed, and errors therein corrected, by this court, in proper cases for their application. They are:   Appeal, appeal in the nature of a writ of error, writ of error, and *certiorari;* and in a proper case the latter is as much a matter of common right as any of the others.   We have numerous cases in which *certiorari* has been used by this court and held a proper proceeding for this purpose, among the most important of which are *Durham* v. *United States,* 4 Hayw., 69; *Kearney* v. *Jackson,* 1 Yerg., 294; *Railroad Co.* v. *Bate,* 12 Lea, 573; *Warner* v. *State,* 13 Lea, 52; *Johnson* v. *Harris,* 16 Lea, 136; *State* v. *Taxing Dist.,* Id., 245, and *Brizendine* v. *State,* 103 Tenn., 677-683 (54 S. W., 982).   This writ, as said by Judge Peck in *Durham* v. *United States,* supra, is of the highest utility and importance for many purposes, and especially in curbing excessive jurisdiction and correcting errors, and most essential to the safety of the people and the public welfare. It was originally held to be a discretionary writ, and its use largely confined to the revision of proceedings not according to the forms of the common law; but under our practice and statutes its scope has been broadened and extended until it is now one of the

recognized modes for the correction of errors used by this court. The reason that it has not been so freely resorted to as other modes is that because in most cases it is less convenient, but it is none the less effective. .

The cases in which it will lie can not be defined. To do so would be to destroy its comprehensiveness and limit its usefulness. It is peculiarly applicable to all cases where the judgment or decree complained of is pronounced in a statutory proceeding, and not according to the course of the common law, where the tribunal is exceeding its jurisdiction, where no appeal or writ of error is allowed, or these remedies have been lost without fault or negligence of the applicant, and in all cases where errors in the adjudications of inferior courts over the judgments of which this has a revisory jurisdiction are sought to be corrected, and there is no other plain, speedy and adequate remedy; and wherever this writ will lie, a *supersedeas* will be granted to stay the proceedings under the judgment or decree sought to be reviewed, in the sound discretion of the court, much the same as in cases where it will be when a writ of error is granted.

These writs are peculiarly applicable to the case at bar. It is a statutory proceeding, widely differing from the courts of the common law, in which judgments may be pronounced against a defendant and executed before final disposition of the entire case is

made, and from which no appeal or writ of error will lie, which will be more fully stated in disposing of the other question involved.

We are of the opinion that *certiorari* is the proper proceeding to bring before this court for review judgments in condemnation proceedings of this character appropriating the lands of citizens for public purposes, where the right of the plaintiff to do so is for any reason denied; and, where merits are shown, a *supersedeas* will issue to prevent the petitioner from entering upon the premises until the case is here decided.

It only remains to determine at what stage of the proceeding the judgment of the circuit court is so far final as to be reviewable in this way.

This is an anomalous action or proceeding, dual in its objects and results. The plaintiff recovers of the defendants the land sought to be appropriated, and the defendants recover of the plaintiff the value of the land and the damages accruing to the remainder of their property in consequence of the appropriation and the construction thereon of the proposed improvement, the former of which judgments may be pronounced and executed before the case is tried upon the question of damages.

The form of the petition and the procedure in the circuit court are prescribed in detail by the statute authorizing it, and are to be found in the Code of

1858, secs. 1325-1348 (Shannon's Code, secs. 1844-1867).

When the petition is filed and the defendant brought before the court by due service of notice, he may make defense by any appropriate pleading, and show cause, if he can, why relief sought should not be granted.

A jury of five or more commissioners is then appointed and instructed to go upon the land along with the sheriff of the county, lay off by metes and bounds the land required for the proposed work, and assess the damages of the owner, and reduce their action to writing, and deliver the same to the sheriff, to be returned by him to the court in which the proceeding is pending.

If no objection is made to the report, it is confirmed and proper judgments entered; but either party may except to it, and, upon sufficient reasons appearing, new commissioners may be appointed, who will be instructed and proceed in the same manner as those first appointed.

Either or both parties on the coming in of the report of the first or the second jury, if a second be appointed, may object thereto, and demand and have a trial in the usual manner before the court and a jury of all issues arising in the assessment of the damages the owner of the property may be entitled to recover.

But the petitioner, notwithstanding the case is undetermined upon the question of damages, and is yet

Tennessee Central Railroad Co. v. Campbell.

pending for a trial upon this issue, may file a bond, with solvent sureties, in a sum double the amount of the damages assessed by the commissioners, payable to the defendants, and conditioned to abide by and perform the judgment of the court in the premises, and take possession of the property sought to be appropriated, and proceed with the construction of its railroad, or other improvement upon the same. The proceeding in this case has not progressed this far, as the commissioners have not filed any report of their action.

The plaintiff insists that there is no final judgment which can be reviewed by proceedings in error until the issues as to the damages to be recovered are tried, and the amount adjudged, while the defendants insist that the order of the court appointing the commissioners to lay off the land and assess the damages is such a final judgment.

We do not agree with either contention. There may be two final judgments in this action, which can be reviewed by separate proceedings in error prosecuted at different times.

The circuit court by implication clearly has authority, upon the filing of the report of the commissioners, and an appeal therefrom upon the question of damages, to a trial by jury in court, to award a recovery of the land described in the report, and issue a writ of possession to the plaintiff upon bond being filed as provided by the statute. Judgment for

the recovery of the land is final for every purpose. The exact part to be appropriated is ascertained and set apart, and possession given the plaintiff. There is nothing left in relation to this part of the proceeding to be adjudged, and it is immaterial to the plaintiff whether the other branch is ever tried. It will not do to hold that the defendants must wait until the question of damages has been adjudged before they can bring the judgment depriving them of the title and possession of their property before this court to have the right of plaintiff to appropriate it finally determined. It would be of small consolation and little profit to them, should the judgment of the trial. court be reversed in the end, if in the meantime the plaintiff has dismantled their premises, made excavations therein, or erected fills or structures upon it, so altering and changing it as to destroy its value to them; and it must be remembered that the bond which the plaintiff is required to give does not cover damages done to the property in constructing the railroad or other improvement upon the same, if the court upon final hearing determine that the plaintiff is not entitled to appropriate it. It only covers the damages which the defendants are entitled to when the land is condemned.

The defendants, if the insistence of the plaintiff is correct, could be deprived of the possession of their property, and its usefulness destroyed, without compensation made or secured; and, if the plaintiff

be insolvent, their final success in resisting its attempt to appropriate their land would be a fruitless victory.

No such result was contemplated by the legislature, nor can be suffered to take place. Every citizen has a right to have the decision of the court of last resort in cases of this character before he can be deprived of the possession of his property. Every principle of right and justice demand that this be so.

We are, therefore, of the opinion that in proceedings of this kind, when the right to appropriate property is contested by the owner, and the case reaches the stage where the petitioner can give bond and take possession of the portion of the premises set apart in the report of the commissioners, and file such bond, the judgment of the circuit court condemning the property may be brought before this court for review by *certiorari*, although the issue as to the damages to be recovered by the defendants, if the appropriation is allowed, are yet pending, untried, in the lower court, and that in a proper case *supersedeas* will issue to restrain the plaintiff from taking possession until the case is here determined.

This case, however, does not come within this rule. The commissioners have not filed their report, no demand has been made or could be made for a trial by jury in court in the ordinary manner, and no bond has been filed, and it is only then that the judgment

becomes final and can be reviewed for the correction of errors.

The application in this case for writs of certiorari and *supersedeas* is, therefore, premature, and must be denied.