THE BOARD OF EDUCATION OF THE CITY OF ELIZA-
BETH IN THE COUNTY OF UNION, PLAINTIFF-RE-
SPONDENT, v. THE CITY OF ELIZABETH AND CITY
COUNCIL OF THE CITY OF ELIZABETH, DEFEND-
ANTS-APPELLANTS.

Argued November 2, 1953—Decided November 23, 1953.

*Mr. Raymond A. Leahy* argued the cause for the appellants.

*Mr. Martin B. O'Connor* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.   This is an appeal by the defendants below from a summary judgment in the Law Division of the Superior Court, which we have certified on our own motion before hearing in the Appellate Division of the Superior Court.

The complaint simply alleges: (1) that on March 25, 1953 the plaintiff board of education decided that it had underestimated in its annual estimate the amount of moneys necessary to run its schools for the current school year; (2) that it delivered to the members of the board of school estimate a statement of the amount of money necessary for that purpose; (3) that on May 29, 1953 the board of school estimate

by formal action determined that the additional sum of $127,517 was necessary for the operation of the schools of Elizabeth for the school year July 1, 1952 to June 30, 1953; (4) that it delivered its certificate to the board of education and to the city council; but that (5) the city council failed to pay over the amount of the appropriation to the plaintiff.

Nowhere in the complaint is there any reference to an emergency. An emergency is first mentioned in the preamble to the certificate and resolution of the board of school estimate of May 29, 1953, attached to an affidavit of the secretary and business manager of the plaintiff board of education supporting its motion for summary judgment. Nor is the nature of the emergency discussed in the moving papers.

The answering affidavits of the city are more enlightening. They show that on March 13, 1952 the board of school estimate certified to the city a school budget of $3,852,814.91 for the school year July 1, 1952 to June 30, 1953, above mentioned. Because the requisition exceeded $1\frac{1}{2}\%$ of the valuation of the assessable ratables of the city as determined by the county board of taxation for 1952, it was necessary under *R. S.* 18:6–53 for the city to consent to the appropriation, which it did on March 19, 1952. Within two months thereafter, on May 18, 1952, the board of education by resolution decided to increase the salaries of all school employees $200 a year commencing July 1, 1952, the beginning of the school year above mentioned. The resolution recited that "it is necessary to have an additional or supplemental appropriation to meet the salary increase contemplated," and to that end it requested the board of school estimate to provide an additional or supplemental appropriation of $190,000. This request the board of school estimate rejected on June 9, 1952. On November 13, 1952 the board of education again requested an additional or supplemental appropriation of $169,725, but this time for the salary increases in the second half of the school year. This request the board of school estimate likewise refused. Nevertheless, in the face of these rejections by the board of school estimate the board of edu-

cation proceeded pursuant to its resolution of May 18, 1952 to grant all of its employees a $200 a year increase beginning July 1, 1952. The affidavit of the comptroller of the city states

"If it now finds itself short of funds, it is not caused by the fact that it underestimated its requirements in its annual estimate, the amount of money necessary, but solely because it granted the salary increases despite the fact that the Board of School Estimate refused to allow the money for such salary increases."

These answering affidavits stand uncontradicted.

█ 1. The city contends that the emergency appropriation of $127,517 is not binding on it because it has not consented thereto. It seeks to apply the concluding sentence of *R. S.* 18:6–53,

"No amount in excess of one and one-half per cent of the valuation of the assessable ratables of any municipality as determined by the county board of taxation shall be appropriated except with the concurrence and consent of the governing body expressed by its resolution duly passed."

to the total of the annual appropriation (prepared pursuant to *R. S.* 18:6–49 to 53) and the emergency appropriation. This construction is not tenable, however, for not only does the opening sentence of the section apply expressly to annual appropriations under *R. S.* 18:6–50 and 51, but emergency appropriations are dealt with separately in succeeding sections of the law, *R. S.* 18:6–55 to 57, the last of these sections being quite explicit as to the duty of the city:

*R. S.* 18:6–57. "Upon receipt of the certificate of the board of school estimate delivered as required by section 18:6–56 of this title, the governing body of the municipality shall immediately appropriate the sum or sums for the purpose or purposes and shall raise such sum or sums in the manner provided by law for the raising of such funds by the municipality in emergencies and the raising of the funds required by such certificate, in such a case, shall be considered an emergency. Upon raising the funds the governing body shall cause the sum or sums to be paid forthwith to the custodian of school funds of the district for such purpose or purposes."

Not only does the construction contended for by the city fly in the face of the express language of the statute, but it might fatally handicap the board of education in the event of disagreement between the board and the city in the event of an actual emergency.

2. With more cogency the city argues that there was in fact no genuine emergency, the situation having been produced by the act of the board of education itself and hence constituting no emergency at all in fact. In a school case an emergency has been defined as "a sudden or unexpected occurrence or condition calling for immediate action," *Frank v. Board of Education of Jersey City*, 90 *N. J. L.* 273, 278 (*E. & A.* 1917). The facts of record as herein set forth and even the facts *dehors* the record as elicited from counsel for the board of education at the oral argument of the appeal in our effort to get at the true facts of the case do not disclose an emergency in the sense in which the word is customarily used. At the most there was dissatisfaction among the employees of the board of education and talk of a strike by its janitors. On the other hand, the record discloses a persistent effort of the board of education, continued over many months, to force the city to appropriate funds for salary increases of $200 a year to each of its employees. Its efforts began within two months after the concurrence of the city in its annual budget for the year 1952-1953. It first sought $190,000 for such salary increases, beginning July 1, 1952, but this request was denied by the board of school estimate on June 9, 1952. The second request, this time for $169,725 for the same purpose, was made on November 13, 1952, only to be rejected on February 27, 1953. The third request, March 25, 1953, this time for $127,517, was finally acquiesced in by the board of school estimate on May 29, 1953, but meantime the board of education had been paying the salary increases since July 1, 1952. The statute does not contemplate such continuous pressure by the board of education on the board of school estimate and through it on the city. In the orderly conduct of school affairs budget-

making should be an annual process except for real emergencies.

3. The board of education, on the contrary, takes the position that the requisition of the board of school estimate is mandatory on the city and that the city may not question the existence of an emergency, and it is on this theory that its complaint is predicated. But it concedes that a taxpayer might question the existence of an emergency as he might any other municipal or administrative action by a proceeding in lieu of *certiorari*. The precise question of the finality of a recitation of a fact in the official action of a public body has been passed on in a taxpayer's suit attacking an alleged emergency appropriation, *Lyons v. City of Bayonne*, 101 *N. J. L.* 455, at *pages* 456–457 (*Sup. Ct.* 1925) :

"The contention of the commissioners is that in each instance specified in the resolutions an emergency has arisen ; that the resolutions in fact so declare, and that the determination of the municipal body upon that fact in the language of the act is 'conclusive as to the character and existence of an emergency.'

This argument, obviously, is predicated upon the notion that the action of the municipal body in declaring an emergency in any given situation is a finality, and not reviewable. Mr. Justice Lloyd, in the recent case of *Willits v. [Borough of] Beach Haven*, [3 *N. J. Misc.* 711], sustained the action of the municipal body upon the ground that the emergency in fact existed as contemplated by the statute ; but he was careful to put his decision upon the ground that, after an examination of the facts, he was satisfied of the existence of an emergency, and he predicated his decision upon the statement that the local municipal action must be taken in good faith. Manifestly, no other rational course was possible, unless we are prepared to abolish the supervisory power of the Supreme Court upon its writ of *certiorari*, upon the mere *ipse dixit* of the municipal body. Such procedure, however, if attempted by the Legislature, would be clearly unconstitutional. *Green v. Heritage*, 64 *N. J. L.* 567 ; *Tennessee Central Railroad [Co.] v. Campbell*, 109 *Tenn.* 640."

If the issue of the actuality of the alleged emergency may thus be raised by an individual taxpayer, it is difficult to see why it should not be equally available to the city representing, as it does, all of the interested taxpayers. We are not concerned with the form in which the issue is raised

whether, as here, by way of defense or by an action in lieu of prerogative writ by a taxpayer. Our concern is solely with the substantial question of fact. If the matter were presented in a taxpayer's suit on the proofs adduced here, we would have no hesitation in setting aside the requisition of the board of school estimate here under attack, and accordingly we see no cause for hesitation in reaching the same conclusion here. Nothing we have said here impinges on the holding in *Townsend v. State Board of Education*, 88 *N. J. L.* 97 (*Sup. Ct.* 1915), and in *Board of Education of Long Branch v. Board of Commissioners of Long Branch*, 2 *N. J. Misc.* 150 (*Sup. Ct.* 1923), cited by the board of education. We are here concerned merely with the question of whether an emergency existed, and we find that there was none.

The judgment below is reversed and the requisition of the board of school estimate under review is set aside and for nothing holden.

BURLING, J. (dissenting). The board of education in its request to the board of school estimate upon which the complaint is founded in this case relied on the "underestimate" clause of *R. S.* 18:6–55 and *not* on the "emergency" clause (or clauses) of *R. S.* 18:6–55. This is the specific language of its complaint. It moved for judgment on the claim *as set forth in the complaint*.

The defendants, while opposing this motion set forth only that the board of school estimate denied the first two requests. They did not show or attempt to show that the board of education had no authority to make salary increases, nor that the board of school estimate overruled or denied such salary increases. The reasonable inference from defendants' affidavits is that on the first two applications the board of school estimate either (a) considered the application too high, or (b) believed the budget appropriation was adequate even to cover the salary increases.

The appropriation section of the statute, *R. S.* 18:6–57, does not call upon the municipality to declare an emergency, but requires it to raise the necessary sums "in the *manner*

provided by law for the raising of such funds by the munici-
pality in emergencies" (emphasis supplied) (*i. e.*, to use
the same *procedure* as would apply where additional funds
are required to be appropriated by virtue of a true municipal
"emergency"). The Legislature recognized the fact that an
"underestimate" might not fall within the common or general
meaning of "emergency," and so provided that in these
board of education cases the provisions for declaration of
emergency and statement of nature thereof (required under
the procedure set forth in municipal appropriations laws)
would be satisfied by the municipal governing body's refer-
ence to the certificate of necessity (*R. S.* 18:6–56) issued
by the board of school estimate (*R. S.* 18:6–57 provides that
the certificate "shall be considered an emergency" insofar as
the municipal governing body is concerned).

This removes the board of education case from the "decla-
ration of emergency" status, and places it on a par with
the boulevard commissioners (*R. S.* 27:17–7) and county
vocational school boards of education (*N. J. S. A.* 18:15–
58.12), as discussed in *Nolan v. Fitzpatrick*, 9 *N. J.* 477,
481–483 (1952). It is a case of an appropriation made
mandatory by law and not subject to any power in the
municipal governing body to review, approve or revise the
amount requisitioned such as is given, for instance, to the
board of chosen freeholders in the case of county libraries
(*R. S.* 40:33–9). In this respect it is a "special" appropria-
tion rather than one that would be contemplated in general
parlance as an "emergency."

*R. S.* 18:6–53 (which calls for municipal consent where
an annual appropriation exceeds $1\frac{1}{2}\%$ of the valuation of
assessable ratables) is specifically and expressly related to
*R. S.* 18:6–50, 51, which concern the annual appropriation,
and is omitted from the sections (*R. S.* 18:6–55, 56, 57,
*supra*) relating to special appropriations. This legislative
classification is consistent with the source statute, *L.* 1903,
*c.* 1, *sec.* 75, as amended by *L.* 1933, *c.* 400, *sec.* 3 (after
amendment in intervening years), which added the proviso
for municipal consent only to the annual budget appropria-

tion (*L.* 1933, *p.* 1114) and omitted it from the special and "emergency" appropriation (*L.* 1933, *p.* 1115). (Compare *L.* 1939, *c.* 265, subsequently designated as *N. J. S. A.* 18:6–58.1, 58.2, 58.3, 58.4 relating to a further restriction on school appropriations, repealed by *L.* 1947, *c.* 151, *sec.* 98, effective July 1, 1947. This 1939 act followed the same legislative scheme: exemption of the mandatory or "emergency" appropriations from the restriction.)

The vesting in the board of school estimate of the function to fix and determine the amount of money necessary to be appropriated for the use of the public schools in the district for the ensuing school year, exclusive of the amount which shall have been apportioned to it by the county superintendent of schools (*R. S.* 18:6–50, *supra*), and the function to fix and determine the amount necessary to be appropriated for special or emergency purposes (*R. S.* 18:6–55, 56, 57, *supra*), may be because of the fact that the municipal governing body appoints two members of the board of school estimate which, with the mayor, gives it a 3-to-2 majority on that board over the board of education representation. This is subject to one reservation, namely that the amount to be appropriated for the ensuing school year under *R. S.* 18:6–50, *supra*, is subjected to concurrence and consent of the municipal governing body where that amount exceeds $1\frac{1}{2}\%$ of the assessable ratables in the municipality (*R. S.* 18:6–53, *supra*), which as hereinbefore demonstrated is not applicable here.

Assuming, however, that this matter could be held to be within the "declaration of emergency" rule as to the municipal governing body (as distinguished from the board of education) and the validity of the "emergency" could be judicially examined, the "emergency" in this case is not one in *fact* but is one of statutory definition, an underestimate of needs or "special" appropriation. The deficiency in the budget is clearly existent and is not questioned but is admitted by defendants' affidavits. Defendants admit the need is caused by salary increases and do not suggest that the salary increases were illegal, invalid, unreasonable or in

any other way improper or *ultra vires*. Viewed as such an attack on the validity of the certificate of necessity for additional funds (and no answer asserting such a defense was filed nor was such a defense indicated in the affidavits opposing plaintiff's motion for summary judgment), it palpably appears that no genuine issue of fact as to such statutory "emergency" exists and plaintiff was therefore entitled to summary judgment as a matter of law.

For these reasons I would affirm the judgment of the Superior Court, Law Division.

Mr. Justice Wachenfeld and Mr. Justice Jacobs authorize me to state that they concur in the views expressed herein.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT and BRENNAN—4.

*For affirmance*—Justices WACHENFELD, BURLING and JACOBS—3.