# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 2000 Session

## ANDREW PALMER v. SOUTH CENTRAL CORRECTIONAL FACILITY DISCIPLINARY BOARD

**Appeal from the Chancery Court for Wayne County**
**No. 10442     Robert L. Holloway, Jr., Chancellor**

---

### No. M1999-01611-COA-R3-CV - Filed August 9, 2000

---

Petitioner, an incarcerated prisoner at South Central Correctional Facility, appeals the dismissal by the trial court of his petition for a writ of certiorari to review a disciplinary decision made by the Correctional Facility Disciplinary Board and approved by the Tennessee Department of Correction ("T.D.O.C."). The defendant filed a Rule 12.02(6), Tenn. R. Civ. P., motion asserting the failure of Petitioner to state a claim for which relief may be granted. The trial court sustained this motion to dismiss. We reverse.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and PATRICIA J. COTTRELL, J., joined.

Andrew Palmer, Clifton, Tennessee, Pro Se.

Tom Anderson, Jackson, Tennessee, for the appellee, South Central Correctional Facility Disciplinary Board.

### OPINION

In his petition, Andrew Palmer, ("Petitioner"), states that on January 13, 1999, he was charged with violating T.D.O.C. policy number 502.05.IV entitled "Unauthorized Financial Transaction." He was convicted of this charge on January 19, 1999. He appealed his conviction to Assistant Commissioner Jim Rose of T.D.O.C. who, on March 17, 1999, affirmed his conviction.

The assertions in the petition include:

The definition of the offense for which Petitioner was convicted indicates that inmates are not allowed to enter into financial transactions with other inmates or the family of other inmates without the prior approval of the Warden. Other areas of T.D.O.C. policy, however, allow for family and friends that are on an inmate's

visitation list to send that inmate money. The person in question who sent Petitioner money is Petitioner's mother, which is obviously a family member and is on Petitioner's visitation list. Therefore, Petitioner was not on notice that any of Petitioner's actions, or the actions of Petitioner's family, could violate T.D.O.C. policy and result in disciplinary action. Further, the only evidence cited by Respondent as a basis for guilt is that a note was included with the money sent by Petitioner's mother that stated "Ya'll motherf***ers are paid in full." Although an ambiguous statement, the money came from Petitioner's mother, which does not violate policy, there is no provision of policy that indicates that any action taken was subject to disciplinary action, and Respondent did not prove by a preponderance of the evidence, or any evidence for that matter, that Petitioner had entered into an unauthorized financial transaction with another inmate or the family of another inmate. Petitioner continues to maintain Petitioner's innocence. This is a violation of T.D.O.C. policy and a denial of due process warranting the issuance of both a statutory and common-law Writ of Certiorari.

Petitioner then prayed for the issuance of writ of certiorari.

The agency record attached to the petition for certiorari is confusing and incomplete, but the Disciplinary Appeal Report of January 21, 1999 states as grounds for appeal to the warden the following:

It seems by the actual evidence in hand, that the above charge should be expunged from Inmate Palmer's record. The reporting official claims that the[re] was an Unauthorized Financial Oblig/Transaction [t]hat inmate Palmer received from the actual sender. [Corrections Corporation of America ("C.C.A.")] came out with a policy saying, "All Inmates shall be allowed to receive money orders and other items that they need as long as that sender is on their visitation list otherwise it would be a violation of the C.C.A. policy. The actual sender in hand is named Charlotte Goode (which is Inmate Palmer's mother)! The sender is on Inmate Palmer's visitation list. So, how is this a violation, if Inmate Palmer did what was required by the C.C.A. policy. It seems by the actual description, that the reporting official (which is Pat W. Cooksey), felt offended by the actual statement that Inmate Palmer's mother said to her children. A mother has the right to say anything to her child. This statement doesn't have anything to do with breaking of a C.C.A. violation. What is the reporting official trying to say, that a Human Being doesn't have the freedom of speech. If so, this is a violation of the United States Amendment. This is the 1st Amendment - Freedom of Speech! Even though, it may sound offensive, this may be the way that a mother and her children communicate. Even though, this is still . . . not a sign of Unauthorized Fina[n]cial Obligation/Transaction, because the money that was sent to Inmate Palmer, from Charlotte Goode met the criteria given by S.C.C.C., C.C.A.

Therefore, it is recommended that this actual charge should be investigated very closely and in the investigations['] conclusion it will be seen that this charge be overturned on the above stated grounds.

Thank you for your time and patience.

In the disposition of this appeal by Warden Jim Rose on March 17, 1999, the conviction of Petitioner was affirmed with the following statement:

Reasons for Disposition: Based on the written incident report that stated that attached to a money order was the note saying that "ya'll mother f------ are paid in full." This is a violation of rules. Also, the inmate did not refute that this statement was attached to a money order.

In the disciplinary report hearing summary following the January 19, 1999 hearing, the following is reflected:

Description of Physical Evidence Introduced (Attach all test results): # 6966 copy of letter and money order stating "Ya'll Mother Fuckers are paid for in full."

Findings of Fact and Specific Evidence Relied Upon to Support Those Findings: Due to statement made in contents of note that "Ya'll Mother Fuckers are paid in full" and due to statement from him he did not refute any evidence presented.

In the incident report of January 13, 1999, the following appears:

Description: On 1-7-99, mail was received from Charlotte Goode 1126 McFerrin Ave. Nashville, TN 37207. This letter contained a money order and a note which read "Yall motha fuckers are [pa]id for in full." After conducting an investigation of this, I mailroom supervisor am charging I/M Palmer 119206 with UFT.

| | | |
|---|---|---|
| Prepared by Staff ID: | WallBE02 | Nutt (Wallace), Betty R. |
| Reported by Staff ID: | WheaPA01 | Wheat (Cooksey), Pat |

Also, in his disciplinary report appeal to the Commissioner of Corrections of March 29, 1999, Petitioner states:

Grounds for Appeal: The statement from Inmate Palmer's mother is not an Unauthorized Financial Oblig/Transaction. See the attached appeal papers for more information on why this charge should be expunged from Inmate Palmer's Institutional Record.

In the brief of the State before this court, it is stated:

The evidence at the hearing consisted of a note containing information of an unauthorized financial transaction, however, the petitioner failed to refute the evidence as it was presented. The note illustrates that there is evidence in the record to support the disciplinary board's conclusion, especially in light of the petitioner's refusal to refute the evidence.

From the record before this court, it appears that Petitioner is being disciplined for receiving a money order from his mother containing a note, apparently written by his mother or someone else, and placed in an envelope mailed to the prison for Petitioner. In his grounds for appeal dated January 21, 1999, he asserts the existence of a C.C.A. policy allowing inmates to receive money orders as long as the sender is on the inmate's visitation list. He further asserts that the sender of the money order was his mother, Charlotte Goode, who was on his visitor's list. If such be true, it is difficult to see how Petitioner can be guilty of the offense of "Unauthorized Financial Transaction" because of a vulgar and insulting note which he neither wrote nor sent to anyone.

The common law writ of certiorari involves a very narrow scope of review and is not available to correct mistakes or to review the intrinsic correctness of the decision of C.C.A. or the Department of Corrections. *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871 (Tenn. Ct. App. 1994). There must be some evidence in the record to support the disciplinary board's conclusion. *Superintendent, Mass. Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985). Certiorari is not available if there is any material and substantial evidence to support the action of C.C.A. and the Department of Corrections.

In this case, the common law writ of certiorari petition was tested by a Tennessee Rule of Civil Procedure 12.02(6) motion which admits all factual allegations of the petition to be true and requires all legitimate inferences therefrom to be drawn in favor of the petitioner. *Dobbs v. Guenther,* 846 S.W.2d 270 (Tenn. Ct. App. 1992). Rule 12.02 provides in part as follows: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counter-claim, cross-claim, or third party claim, shall be asserted in a responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion in writing; . . . (6) failure to state a claim upon which relief can be granted, . . . ."

Tennessee Code Annotated section 27-8-101 is declaratory of the common law writ of certiorari, *Hewgley v. Trice*, 207 Tenn. 466, 340 S.W.2d 918 (1960); *Roberts v. Brown*, 43 Tenn. App. 567, 310 S.W.2d 197 (1957), and is distinguishable from the statutory writ of certiorari provided by Tennessee Code Annotated section 27-8-102. In the case at bar, we are dealing alone with common law certiorari. In *Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870 (Tenn. 1916), the Tennessee Supreme Court held that both the trial court and the court of appeals had erred in refusing to grant a petition for writ of common law certiorari to the chief of police to review his dismissal as chief of police by the city council. Said the court:

> The writ of certiorari was a remedy in civil cases at common law, the contention of the counsel of the city to the contrary notwithstanding. It may be true

that its earliest use was on the crown, or criminal, side of the Court of King's Bench, but if so its use on the civil side later came into general use.

It was said by this court in *Tennessee Railroad Co. v. Campbell*, 109 Tenn. 645, 75 S.W. 1012:

"The writ of certiorari does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence. This court * * * is not restricted from its use by section 10 of article 6 of the Constitution, providing that the judges of inferior courts of law and equity shall have power to issue it in civil cases to remove them from any inferior jurisdiction into a court of law. This provision was only intended as a guaranty of the continuance of a power with which these judges were already vested."

Our statute was not intended to work a change in the common-law function of the writ, as a supervisory or "superintending writ," as it has been called. The statute specifically and affirmatively provides that certiorari lies "where no appeal is given," but it does not stipulate that provision for an appeal shall, in all cases, be deemed an adequate remedy, binding or restraining "the judgment of the court" as to its being a speedy and adequate remedy in cases where an "inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally."

*Conners*, 189 S.W. at 871.

The Supreme Court reversed and remanded the case with directions that should have left no doubt as to the course of action to be pursued by the trial court.

We hold, therefore, that the circuit judge and the Court of Civil Appeals were in error in holding that certiorari was not awardable, and in not quashing the proceeding in the board of commissioners as being in excess of jurisdiction, illegal, and void, *if the same shall appear to be as [the chief of police] states in his petition*.

Reversed, and remanded to the circuit court, with direction that the writ be issued, so that a judgment may be rendered in accord with what is herein held.

*Id.* at 872 (emphasis added). The trial court, in *Conners* on remand, apparently misconstrued the Supreme Court holding and on the second appeal Chief Justice Grafton Green repeated and described the procedure that should have occurred on remand. "The case was remanded to the circuit court, with directions to issue the writ 'to remove the proceeding from the inferior board for the purpose of revision, not for a trial *de novo*, but for review of the record to be certified from the inferior

-5-

tribunal, and for judgment of quashal or affirmance.' " *City of Knoxville v. Conners*, 139 Tenn. 45, 201 S.W. 133 (Tenn. 1918). The continued viability of the *Conners'* rule is attested in *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998).

The parallel to the case at bar is striking. In his petition for certiorari, Petitioner has asserted that a policy existed at C.C.A. on January 7, 1999 that allowed inmates to receive money orders from persons on their visitors list and that his mother, Ms. Goode, was on his visitors list. When Respondent chose to employ a Rule 12.02(6), Tenn. R. Civ. P., motion to test the sufficiency of the petition, it necessarily conceded hypothetically the truth of Petitioner's allegations. Further included in the allegations of the petition is the entry made by C.C.A. staff of January 7, 1999, wherein it is stated: "Mail was received from Charlotte Goode, 1126 McFerrin Avenue, Nashville, Tennessee 37207. This letter contained a money order and a note . . . ." This allegation of the petition too must be accepted as true in the face of a Rule 12.02(6) motion. If these allegations are in fact true, it is difficult on the record that is before the court to see how Petitioner can be guilty of an unauthorized financial transaction. There appears to be no evidence to support such a finding.

"It is a question of law whether the factual evidence is legally sufficient to uphold a judgment, and therefore, the courts will review the merits of the case to determine whether the evidence in the record meets this standard." 14 Am.Jur.2d *Certiorari* § 107 (2000); *see also Petition of Gant*, 937 S.W.2d 842 (Tenn. 1996).

Neither this court nor the trial court knows what is actually contained in the record before C.C.A. and the T.D.O.C.. All we have are allegations in a petition for certiorari challenged by a 12.02(6) motion with such allegations, if true, indicating that there is no evidence to support a conviction. We therefore hold that under the circumstances and in accordance with *Conners v. City of Knoxville*, 136 Tenn. 428, 189 S.W. 870 (1916), the trial court erred in not issuing the writ of certiorari "to remove the proceeding from the inferior board for the purpose of revision, not for a trial *de novo*, but for review of the record to be certified from the inferior tribunal, and for judgment of quashal or affirmance."

One other question presented by the petition must be addressed. The petitioner makes the following assertion:

> T.D.O.C. Policy # 9502.01.VI.E.3.c.l states, "The inmate shall have the right to decline to testify, and it shall be the burden of the reporting employee to prove guilt by a preponderance of the evidence." *Petitioner did testify, but did not comment on the evidence, which, by the above policy, is Petitioner's right. However, the Disciplinary Report Hearing Summary issued by Respondent indicates that guilt was found, in part, on Petitioner exercising his right to decline to comment on the evidence.* This is a violation of T.D.O.C. policy and a denial of due process warranting the issuance of a common-law Writ of Certiorari.

(Emphasis added).  This portion of the petition seems to indicate that the petitioner chose to testify but claimed a right not to comment on the evidence.  If the petitioner chose to testify, he waived his constitutional rights, federal and state, relative to self incrimination.

> When the defendant elected to testify in support of his defense, and took the witness stand, he waived his constitutional rights, federal and state, against self incrimination as to matters which were relevant, material and germane to the issues which the jury would be required to resolve.  Thus, the defendant was not entitled to invoke the privilege because the question sought to elicit information which was probative of the issues in controversy.

*State v. Gilbert*, 751 S.W.2d 454, 463 (Tenn. Crim. App. 1988) (citations omitted).

The case is reversed and remanded to the trial court for proceedings in conformity with this opinion.  Costs of this cause are assessed against Respondent/Appellee.

_____
WILLIAM B. CAIN, JUDGE